F I L E D
United States Court of Appeals
Tenth Circuit

JUN 12 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN H. THEIS, JR.,

　　Plaintiff-Appellant,

　　v.

DENVER BOARD OF WATER
COMMISSIONERS; HUBERT FARBES,
JR.; ROMAINE PACHECO; MONTE
PASCOE; RICHARD KIRK; RONALD
LEHR, in their official capacities as
commissioners; and HAMLET BARRY,
in his individual and official capacity as
Manger of the Board,

　　Defendants-Appellees.

No. 97-1040
(D.C. No. 95-Z-349)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.


　　John Theis, Jr., brought this action after his position with the Denver Water

Department was eliminated as part of a reduction in workforce. He alleged violations of

his procedural and substantive due process rights, of the Denver City Charter, of the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

veterans' preference rights set forth in the Colorado Constitution, and of the Age Discrimination in Employment Act (ADEA). The district court granted summary judgment in favor of defendants on all claims except the ADEA claim. A jury found in favor of defendants on the ADEA claim. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

Theis was a classified employee of the water department from April 2, 1973, through October 14, 1994, and served as Superintendent of Transmission and Distribution from 1976 to October 1989. He was transferred to the newly-created position of Assistant to the Executive Director of Operations in October 1989 because of his alleged problems in supervising employees. He had no supervisory responsibilities in the new position.

Hamlet Barry was appointed Manager of the water department in January 1991. He determined Theis' job functions were not vital to the water department and arranged for Theis to work temporarily offsite with the Airport Legal Services Section of the Denver City Attorney Office. Although Theis was allegedly concerned the assignment violated water department personnel rules, he ultimately accepted the position. He retained his title but his day-to-day supervision was by the Assistant City Attorney. In January 1992, Theis' job title was changed to Management/Operations Staff Assistant III and he was formally assigned to the Director of Engineering. According to Barry, the

change was an administrative matter. It did not affect Theis' duties or his pay.

On August 31, 1993, Barry sent a letter to Theis proposing that, effective December 31, 1994, Theis would either leave the employ of the water department and become employed by the City and County of Denver or the City and County of Denver would reimburse the water department for all of Theis' compensation. Barry allegedly advised Theis on several occasions that his position would be abolished in the future. Barry allegedly encouraged Theis to speak with division directors in the water department about whether they needed his services and urged Theis to apply for any job vacancies for which he qualified.

The Board implemented a cost containment effort in 1994 as a result of actual and projected revenue shortfalls in the water department. A ten-member sub-committee composed of two water board commissioners, Barry, and seven division directors in the department developed cost containment proposals and made recommendations to the Board. One of the sub-committee's recommendations was elimination of approximately fifty jobs in the water department through termination and attrition. Barry told Theis in a telephone conversation on June 17, 1994, that he expected Theis' position to be eliminated. The Board accepted the cost containment recommendations and instructed the department to begin implementation. No formal notices were given to employees whose positions were to be eliminated until after August 2, 1994, when the Board adopted amendments to personnel policies regarding layoffs and reductions in force.

Theis protested his proposed layoff and suggested alternatives, but on September 14, 1994, at a meeting with the Director of Engineering of the water department, Theis was given official written notice of termination effective October 14, 1994. Theis requested a review through the water department's grievance procedure, but was informed the water department had no process to allow such review. Theis and six other water department employees were terminated and forty-three additional positions were eliminated through attrition.

In granting partial summary judgment in favor of defendants, the district court concluded (1) Theis' ADEA claim would proceed to trial; (2) by agreement of Theis, the claim based upon violation of the city charter was not viable; (3) the reduction in force was, as a matter of law, bona fide; (4) because the reduction was bona fide, Theis did not have a right to a pre-termination hearing and had no claim for violation of his procedural due process rights; (5) because the reduction was bona fide, Theis had no claim for violation of his substantive due process rights; and (6) the veterans' preference claim would be dismissed because Theis "did not apply for any sort of veteran's preference" and because his "position in the company . . . was a unique position" and there were no "other comparable positions." App. at 846-51.

II.

**Summary judgment**

In reviewing a grant of summary judgment, we apply the same standard applied by

the district court under Federal Rule of Civil Procedure 56(c). <u>King v. Union Oil Co.</u>, 117 F.3d 443, 444-45 (10th Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**Procedural due process claim**

Theis contends defendants violated his procedural due process rights by terminating him without a pre-termination hearing.[1] In granting summary judgment in

---

[1] After carefully examining the record on appeal, we conclude Theis' procedural due process claim was confined to defendants' alleged failure to provide a pre-termination hearing. The amended complaint generally alleged Theis "was denied his rights to . . . procedural due process," but did not specifically outline the parameters of the claim. App. at 300. In responding to defendants' motion for summary judgment on the procedural due process claim, Theis mentioned only the right to a pretermination hearing. At the hearing on the parties' summary judgment motions, Theis again discussed "the issue of whether [he] had a right to a hearing of some sort prior to his termination," but made no mention of his interest in a post-termination hearing. Supp. App. at 6. At the conclusion of the hearing, the district court granted summary judgment in favor of defendants on the procedural due process claim, and discussed only the right to a pre-termination hearing. After granting summary judgment in favor of defendants, the court asked the parties if there were "[a]ny questions about my rulings this morning." App. at 851. Theis responded, "We have none, your Honor." <u>Id.</u> at 852. In a motion for reconsideration filed after the district court's ruling, Theis made an ambiguous reference to a "post termination" hearing, but focused his arguments almost exclusively on the alleged denial of a pre-termination hearing. Supp. App. at 57-60; <u>see</u> <u>United States v. Castillo-Garcia</u>, 117 F.3d 1179, 1197 (10th Cir.) (arguments raised for first time in a motion for reconsideration are not properly before the court and generally need not be addressed), <u>cert. denied</u>, 118 S.Ct. 395 (1997). Finally, in his appellate pleadings, the only reference to a post-termination hearing is an ambiguous statement in his reply brief. Theis' Reply Brief, at 2 ("Post-termination procedure could also be made available.").

favor of defendants, the district court did not conclusively determine whether Theis had a protected property interest. Instead, it concluded Theis was not entitled to any due process protections because the reduction in workforce was bona fide.

> The Due Process Clause of the Fourteenth Amendment . . . protects against governmental deprivations of life, liberty, or property "without due process of law." In determining whether an individual has been deprived of his right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process.

Fathing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir. 1994) (internal citations omitted).

For purposes of this appeal, we will assume Theis had a protected property interest in his position with the water department, at least prior to the reduction. The question then becomes whether he was afforded sufficient process prior to his termination. Although defendants urge us to expressly recognize a reorganization exception to the procedural due process requirements in cases of bona fide reductions, see, e.g., Washington Teachers' Union Local #6 v. Board of Education, 109 F.3d 774, 779-80 (D.C. Cir. 1997) (suggesting a property interest in continued employment may not survive a bona fide reduction in force), we find it unnecessary to do so. The uncontroverted facts contained in the record on appeal indicate Theis was effectively provided a pre-termination hearing because, as argued by defendants in their motion for summary judgment, he was provided with oral and written notice of his termination and he had

several opportunities to discuss his impending termination with Barry, the manager of the water department. See West v. Grand County, 967 F.2d 362, 367-68 (10th Cir. 1992) (discussing requirements of pre-termination hearing). Thus, even if Theis' assumed property interest in his employment survived elimination of his position, he was granted all the pre-termination process that was due. See id. at 367 ("individual entitled to due process protection needs only to be given notice and an opportunity to respond").

**Substantive due process claim**

Theis contends defendants violated his substantive due process rights by terminating him in an arbitrary and capricious manner. Theis argues defendants had been trying to terminate him since as early as 1991. In addition, he argues several of the Board members charged with applying the water department's personnel policies were unfamiliar with those policies and unqualified to apply them.

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994). To date, neither the Supreme Court nor this court has decided whether substantive due process protects a public employee's interest in continued employment. See Archuleta v. Colorado Dept. of Institutions, 936 F.2d 483, 489 n. 6 (10th Cir. 1991) (in employment case, court noted it is unclear "what interest is required to trigger substantive due process guarantees"). We

find it unnecessary to decide this question because, even assuming a substantive due process right exists in this context, the uncontroverted facts indicate Theis' termination was neither arbitrary nor capricious. "To the extent a substantive due process claim is available, the elements are relatively straightforward. Essentially, the employee must show: (1) a property interest in continued employment and (2) a termination of that interest by the employer that was arbitrary or capricious."[2] Harvey Brown and Sarah V. Kerrigan, 42 U.S.C. § 1983: The Vehicle for Protecting Public Employees' Constitutional Rights, 47 Baylor L. Rev. 619, 645 (1995). "When a fundamental right is not implicated, the substantive due process guarantee ensures merely that state action which deprives an individual of his liberty or property must have some rational basis in fact; the reason for the deprivation must be rationally related to a legitimate governmental purpose." Id.

The uncontroverted facts presented by defendants to the district court indicated Theis' position was selected for elimination along with several other positions during a bona fide reduction in force. Based upon this uncontroverted evidence, we conclude as a matter of law that Theis' termination was rationally related to defendants' interests in reducing the annual expenditures of the water department.

---

[2] The Seventh Circuit also requires a plaintiff to demonstrate the decision-makers committed another substantive constitutional violation or that state remedies were inadequate. See Wudtke v. Davel, 128 F.3d 1057, 1062 (7th Cir. 1997).

**Denver City Charter claim**

Theis' amended complaint included separate claims for breach of express contract, breach of implied contract, and violation of the Denver City Charter. In his deposition, Theis alleged his breach of contract claims were based, in part, on § C4.19 of the Charter[3], which Theis interpreted as preventing the Board from dismissing him except for cause. At the hearing on the parties' dispositive motions, the district court concluded, without objection from Theis, that the breach of express contract claim and the Charter claim were "not viable." Supp. App. at 4. As for the breach of implied contract claim, the district court granted summary judgment in favor of defendants.

On appeal, Theis contends the district court erred in granting summary judgment in favor of defendants on his claim for violation of the Denver City Charter. According to Theis, he abandoned only part of this claim. More specifically, he argues he abandoned his claim only to the extent it was based on § C4.27 of the Charter and concerned defendants' misappropriation of funds in assigning him to work at the Denver International Airport, but he did not abandon his claim to the extent it was based on § C4.19 of the Charter.

Theis' arguments are confusing and, ultimately, without merit. His amended

---

[3] Section C4.19 provided in pertinent part: "The Board shall have power to employ such personnel including legal staff, and fix the classifications thereof as it may deem necessary, and all such personnel shall be hired and dismissed upon the sole basis of fitness and ability to perform duties and functions assigned by the Board." App. at 491.

complaint listed a separate claim for violation of the Charter, but did not outline a specific provision in the Charter. Although Theis briefly mentioned the Charter in his response to defendants' summary judgment motion, contending it created a property interest in his employment and required a hearing prior to termination, he again failed to outline the parameters of his separate claim based on the Charter. Moreover, Theis failed to refute the district court's conclusion during the hearing on the summary judgment motions that his Charter claim had been "confessed." Finally, in his motion for reconsideration of the court's grant of summary judgment, Theis mentioned the Charter in the context of his contract claims, but again failed to even discuss his separate claim based on the Charter. For these reasons, we conclude Theis abandoned his separate City Charter claim at the district court level.

To the extent Theis is challenging the district court's grant of summary judgment on either his breach of express contract or breach of implied contract claims, we conclude the court's ruling is correct. Even if, as argued by Theis, he had an express or implied contract that incorporated § C4.19 of the Charter, the alleged express or implied contract also necessarily included the water department's personnel policies, which expressly provided for reductions in force and eliminated an employee's right to a grievance hearing if he or she was selected to be terminated as part of a reduction. Thus, defendants' failure to provide Theis with a pre-termination hearing did not violate any express or implied contract between the Board and Theis.

**Veterans' preference claim**

In his amended complaint, Theis alleged defendants violated his veterans' preference rights guaranteed by the Colorado Constitution when they failed to terminate non-veterans prior to terminating him. The district court granted summary judgment in favor of defendants on this claim on the following grounds:

> I have not been aware until this hearing this morning that plaintiff was pointing to comparable positions. It's pretty clear to me that on the veteran's claim, plaintiff did not apply for any sort of veteran's preference. And there is certainly an estoppel argument which has not in any way been rebutted by the plaintiff. But even more significantly, it has been pointed out by the defendants that defendants -- that plaintiff's position in the company with the defendant was a unique position; that we don't have the situation where you're looking at equal or lesser comparables or equivalent positions. It doesn't appear that there is any other comparable position.
>
> The legislature in passing this has given an example, as was pointed out in the argument, that if one employee has been employed by the state for ten years and a veteran of two years of wartime has been employed eight years and they're both in comparable jobs, then the veteran would be retained in the case of a reduction in force.
>
> And that type of example does not apply; and indeed, plaintiff has the responsibility of coming forward and showing by way of affidavit, sworn statement, something, facts which show that there are other comparable positions. Plaintiff has not done so, and the veteran's preference retention claim falls.

Id. at 848-49.

Article XII, § 15 of the Colorado Constitution "sets forth a system for granting preference to veterans in hiring and layoff within the personnel systems of the state and its political subdivisions." Kennedy v. Board of County Comm'rs, 776 P.2d 1159, 1162 (Colo.App. 1989). Subsection (1)(b) "provides for adding points to the job qualification

-11-

examination scores of eligible veterans." Id. Subsection 15(3)(a) outlines the preference system for reductions in force:

> When a reduction in the work force of the state or any such political subdivision thereof becomes necessary because of lack of work or curtailment of funds, employees not eligible for added points under subsection (1) of this section shall be separated before those so entitled who have the same or more service in the employment of the state or such political subdivision, counting both the military service for which such points are added and such employment with the state or such political subdivision, as the case may be, from which the employee is to be separated.

The Colorado Court of Appeals has concluded "[t]he plain meaning of subsection [15](3)(a) directs that employees not eligible for veterans' preference be laid off before eligible veterans with the same or more years of seniority." 776 P.2d at 1162.

Although Theis contends the plain language of subsection 15(3)(a) bestows an absolute preference on veterans, we disagree. The language of subsection 15(3)(a) does indicate a preference for veterans, but does not specifically outline how that preference is to be implemented during reductions in force. Because the language is ambiguous on this point, "[o]ur primary task is to 'ascertain and give effect to the intent of those who adopted [the amendment].'" Tivolino Teller House, Inc. v. Fagan, 926 P.2d 1208, 1211 (Colo. 1996) (quoting Urbish v. Lamm, 761 P.2d 756, 760 (Colo. 1988)). More specifically, because the provision was adopted by popular vote, "we must consider the intent of the voters in enacting [it]." Id. at 1211. In doing so, we find helpful an analysis of the 1970 ballot proposals published by the Legislative Council of the Colorado General

-12-

Assembly, which briefly describes how the retention preference set forth in subsection 15(3)(a) was intended to be implemented:

> A major addition to the veterans' preference section would be the provision for retention preferences in case of a reduction in the number of employees. Military service during wartime up to ten years could be included in computing length of service. For example, if one employee had been employed by the state for ten years, and a veteran of two years of wartime service has been employed eight years, both in comparable jobs, the veteran with his combined military service and state employment time would be retained in case of a reduction in personnel.

Legislative Council of the Colo. Gen. Assembly, An Analysis of 1970 Ballot Proposals, Research Pub. No. 151, at 11-12 (1970) (emphasis added). Although we are not bound by this analysis, we believe it provides useful insight into the Colorado electorate's understanding of how this constitutional amendment would be implemented. See Tivolino, 926 P.2d at 1214. In particular, we believe the analysis indicates the voters of Colorado intended that retention preference be implemented only in situations where a public employer is deciding who among several employees holding comparable jobs will be terminated, and did not intend that the amendment make seniority the overriding factor in all reductions, or that it remove a public employer's discretion to define the group within which a reduction is to be effected.

As the district court effectively concluded, the uncontroverted evidence in the record indicates each of the seven department employees terminated occupied unique positions that were not conducive to application of the veterans' preference provision. In particular, Theis' position was unique within the department. Accordingly, even though

he was a veteran, he was subject to termination because there were no other comparable employees for purposes of application of the veterans' preference provision. Thus, we conclude there is no evidence in the record from which a reasonable jury could conclude defendants violated Theis veterans' preference rights under the Colorado Constitution.

**ADEA claim**

Theis contends he is entitled to a new trial on his ADEA claim for two reasons. First, he contends the district court's order granting summary judgment to defendants on the non-ADEA claims effectively prevented him from introducing and arguing evidence of pretext. Second, he contends the court improperly instructed the jury in Instruction No. 16 it could only consider ageist statements made by plaintiff's supervisor occurring at or near the time of the discriminatory employment decisions.

*Exclusion of evidence of pretext.* Theis contends the court's "order of April 17, 1996 . . . granting summary judgment for Defendants on all issues except for the age discrimination claims, precluded [him] from arguing that the activities of Defendants raised in [his other claims] were pretextual and thus constituted evidence probative of [his] age discrimination claim." Br. at 38. According to Theis, that evidence included defendants ignoring or refusing to follow clearly established rules set forth in the Colorado Constitution, the Denver City Charter, and the department's own personnel rules, defendants denying him rights guaranteed under the United States Constitution, and

defendants modifying the department's personnel rules after selecting the individuals who would be terminated.

We agree with defendants that Theis' arguments are without merit because he has failed to demonstrate where, during trial, he attempted to introduce any of the above-listed evidence, and where, during trial, the district court excluded the evidence.

*Jury Instruction No. 16.* Instruction No. 16 provided:

> Remarks made by a person in a decisionmaking position at the Water Board which relate to age do not create an inference of discrimination unless Mr. Theis can demonstrate some connection between those remarks and his termination. Isolated comments, unrelated to Mr. Theis' termination, are insufficient to show age discrimination in termination decisions. In determining whether comments are evidence of age discrimination, you should consider whether the remarks were:
> (1) Directly related to Mr. Theis, his position, or the Water Board's reduction in force policy; and
> (2) Made at or near the time the decision was made.
> You should also consider that statements relating to seniority or the length of an employee's employment do not, by themselves, create an inference of discrimination. Such remarks may well relate to long-term employees who are under the age of 40 and thus outside the class of persons protected by the Age Discrimination in Employment Act. Length of service does not necessarily equal age.

App. at 834. According to Theis, this instruction was erroneous because it prevented the jury from considering ageist statements made to Theis by his supervisor at times prior to the reduction in force.

In reviewing challenges to jury instructions, we conduct a de novo review to determine whether, as a whole and in light of the entire record, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues

-15-

and applicable standards.  Allen v. Minnstar, Inc., 97 F.3d 1365, 1368 (10th Cir. 1996).

Reversal is warranted where a deficient jury instruction is prejudicial.  Thus, where a jury

instruction is legally erroneous, we must reverse if the jury might have based its verdict

on the erroneously given instruction.  Coleman v. B-G Maintenance Mgmt. of Colo., Inc.,

108 F.3d 1199, 1202 (10th Cir. 1997).

Instruction No. 16 appears to be substantially based on our decision in Cone v.

Longmont United Hospital Association, 14 F.3d 526 (10th Cir. 1994), where we held

"[i]solated [ageist] comments, unrelated to the challenged action, are insufficient to show

discriminatory animus in termination decisions," and an ADEA plaintiff "must

demonstrate a nexus . . . between . . . allegedly discriminatory statements and the

[employer]'s decision to terminate."  Id. at 531.  The language in the instruction to which

Theis objects appears to simply be a slight reformulation of Cone's "nexus" requirement.

Even assuming, arguendo, the instruction was erroneous, it is impossible to

determine if the error was prejudicial.  Although Theis' reply brief includes a few pages

from his own trial testimony in which he discusses his supervisor making a comment

about his age, that testimony alone is not sufficient to allow us to determine the question

of prejudice.[4]  In fact, the lack of transcript leaves us without any context for the

testimony cited by Theis or any basis for concluding the district court's giving of

Instruction 16 prejudiced Theis.

---

[4]  Defendants have moved to strike these additional pages of testimony.

## III.

The judgment of the district court is AFFIRMED.  Defendants' motion to strike plaintiff's amended appendix is DENIED as moot.

<div style="margin-left: 50%;">

Entered for the Court

Mary Beck Briscoe
Circuit Judge

</div>