967 F.2d 362
 Trisha L. WEST, Plaintiff-Appellant and Cross-Appellee,
v.
GRAND COUNTY; Jimmie Walker, individually and as County
Commissioner; David Knutson, individually and as County
Commissioner; John L. Zimmerman, individually and as County
Commissioner; and Elaine Coates, individually and as County
Attorney, Defendants-Appellees and Cross-Appellants.
 Nos. 90-4095, 90-4100.
 United States Court of Appeals,
Tenth Circuit.
 June 5, 1992.
 
 Erik Strindberg (Samuel Alba and James A. Boevers, with him, on the briefs), Prince, Yeates & Geldzahler, Salt Lake City, Utah, for plaintiff-appellant and cross-appellee.
 Barbara K. Berrett (Daniel J. Bertch and Donald J. Purser, with her, on the briefs), Purser, Okazaki & Berrett, Salt Lake City, Utah, for defendants-appellees and cross-appellants.
 Before BALDOCK, McWILLIAMS, and EBEL, Circuit Judges.
 
 ORDER DENYING PETITION FOR REHEARING
 
 1
 After careful consideration, the court hereby DENIES appellant's petition for rehearing.
 
 
 2
 However, in response to the petition for rehearing, the court determined that it did not have all of the depositions which should have been included as a part of the record on appeal. Accordingly, those depositions were ordered up from the district court, and they were reviewed carefully in conjunction with the petition for rehearing.
 
 
 3
 To reflect the fact that the depositions were reviewed as part of the appellant record and further to clarify an apparent ambiguity in footnote 7, the court has determined to issue a revised draft of the opinion in this case reflecting changes in the text of page 12 and in footnotes 6 and 7.
 
 
 4
 The Clerk is instructed to withdraw our previous opinion in this case and to issue, instead, the attached opinion as the opinion of the court.
 
 
 5
 Before BALDOCK, McWILLIAMS, and EBEL, Circuit Judges.
 
 
 6
 EBEL, Circuit Judge.
 
 
 7
 In this case arising under 42 U.S.C. § 1983, we examine whether the discharge of a public employee pursuant to an alleged reduction in force satisfied the due process requirements of the Fourteenth Amendment to the United States Constitution. The District Court for the District of Utah found that the employee had a property interest in continued employment, that she was entitled to due process, and that the procedures afforded her satisfied constitutional requirements. We affirm.
 
 I. BACKGROUND
 
 8
 Trisha West served as the legal secretary for Grand County Attorney William Benge for approximately one year. When she resigned from her former job at First Security Bank to accept this position in 1985, Benge assured her that electoral changes would not jeopardize her position. After a six-month probationary period, West became a permanent employee according to the Grand County Personnel Manual, which established a civil service system for county employees based upon merit principles. Accordingly, she could not be terminated except for cause, curtailment of work, or lack of funds.
 
 
 9
 Nevertheless, West was discharged in 1986 when Elaine Coates defeated Benge in the election for Grand County attorney and Coates allegedly determined that the anticipated workload in the office did not justify employing a full-time secretary. Instead, Coates employed her own former secretary under a different title at her own expense. Although her assessment of the workload proved erroneous,[1] Coates fulfilled her election promise that she would make the county attorney position more efficient. She generated $52,000 in additional revenue and reduced the payroll in her department by $6,144.
 
 
 10
 West contends that the county attorney's reduction in force that eliminated the position of legal secretary was really a subterfuge designed to terminate her without cause.[2] She asserts that the position of legal secretary was essentially left intact, although under a different title, and that ultimately it was filled by two individuals.
 
 
 11
 West brought this action under 42 U.S.C. § 1983,[3] alleging (1) a deprivation of her property interest in continued employment without due process of law in violation of the Fourteenth Amendment to the United States Constitution and (2) breach of her employment contract as set forth in the Grand County Employment Manual. Because the district court declined to exercise pendent jurisdiction over the breach of contract claim and the state law claims stemming therefrom,[4] we are concerned only with West's procedural due process challenge.
 
 
 12
 The procedures employed in this case can be summarized as follows: West did not receive a formal pretermination hearing. However, she received notice of her potential dismissal during a meeting with Coates and she otherwise indicated that she was aware that her job likely was not going to be retained. She also had the opportunity to discuss her rights as a permanent employee with both Coates and the County Commissioners. Following her discharge, West received a grievance hearing before the Commissioners, where her attorney presented witnesses and evidence on her behalf. The Commissioners found that West had not presented substantial evidence to support her claim that the abolition of her position was a subterfuge. The Commissioners concluded that West's termination was the result of a proper reduction in force.
 
 
 13
 Following her unsuccessful grievance hearing, West filed this action in the United States District Court for the District of Utah. The parties filed cross motions for summary judgment in 1989. A United States magistrate first heard these motions. He found that West's position as legal secretary was exempt under the County Personnel Management Act ("the Act") and that therefore her position was not a permanent position. Thus, the magistrate concluded that West had no property interest in continued employment with Grand County.
 
 
 14
 The district court declined to follow the magistrate's recommendation on this issue, finding instead that the Act did not apply and that West did have a property interest in her continued employment. Nevertheless, the court denied West's motion for partial summary judgment and granted the defendants' summary judgment motion because it concluded that the pretermination and post-termination procedures afforded to West satisfied due process.
 
 
 15
 West appeals the district court's decision. Grand County, Commissioners Knutson and Zimmerman, and County Attorney Coates cross-appeal as to the district court's finding that West had a property interest in continued employment. This court has jurisdiction to hear this appeal under 28 U.S.C. § 1291.
 
 
 16
 We review the district court's ruling on summary judgment de novo. Aldrich Enters., Inc. v. United States, 938 F.2d 1134, 1138 (10th Cir.1991). "Specifically, we must determine whether there are any genuine issues of material fact and, if not, whether the substantive law was correctly applied." Id. In making this determination, "[t]he evidence is viewed in the light most favorable to the nonmovant." Id. Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 17
 The record and the case law clearly establish that West had a protected property interest, was thereby entitled to due process, and received a sufficient pretermination and post-termination hearing. West did not establish otherwise. Accordingly, we affirm the decision of the district court.
 
 II. DISCUSSION
 A. Protected Property Interest
 
 18
 The Supreme Court established the scope of a protected property interest in Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972): "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."
 
 
 19
 This Circuit has made it clear that when a person's employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment. See Archuleta v. Colorado Dep't of Insts., 936 F.2d 483, 489 (10th Cir.1991) (Youth Services worker who could be terminated only for cause had a protected property interest in continued employment); Goudeau v. Independent Sch. Dist. No. 37, 823 F.2d 1429, 1431-32 (10th Cir.1987) (preschool aide who could be terminated only for cause, lack of work, or insufficient funds had a protected property interest in continued employment); Bailey v. Kirk, 777 F.2d 567, 574 (10th Cir.1985) (police chief who could not be suspended from employment except for good and sufficient cause had a protected property interest in continued employment); Vinyard v. King, 728 F.2d 428, 432 (10th Cir.1984) (permanent employee who could not be discharged without cause had a protected property interest in employment); Poolaw v. City of Anadarko, 660 F.2d 459, 463-64 (10th Cir.1981) (city employee who could be discharged only for cause had a protected property interest in continued employment), op. after remand, 738 F.2d 364 (10th Cir.1984), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985).
 
 
 20
 Under Grand County's Personnel Policies and Procedures manual, West was a permanent employee who could not be discharged "except for cause or reasons of curtailment of work or lack of funds." Grand County Personnel Policies and Procedures, art. I, § XIV(A).[5] Utah's merit statute, Utah Code § 17-33-8(2), does not supersede this manual to make West's position "exempt" rather than permanent. Utah Code § 17-33-1(4) states: "This chapter shall be optional with counties having fewer than 130 employees not covered by other merit systems." (emphasis added). Because Grand County has less than 130 employees who are not covered by other merit systems (e.g., peace officers' or firemen's merit systems, as referenced in section 17-33-1(3)), it can opt to have its own merit system under the plain language of the Act. This interpretation is consistent with the state's policy to grant counties a certain degree of autonomy.
 
 
 21
 Grand County clearly opted to have its own merit system, as delineated in its Personnel Policies and Procedures manual. Its restrictive discharge policy gave West a property interest in continued employment that could not be curtailed without constitutional protections. Accordingly, we affirm the district court's finding that West was entitled to due process.B. Due Process Requirements
 
 
 22
 In Goudeau, the Tenth Circuit recognized the importance of employees' due process rights even when the employer articulates a permissible reason for the discharge: "Without adequate due process protection, an employee ... can never discover whether the reasons offered for her discharge are true--or are false and a mere subterfuge." 823 F.2d at 1431. Thus, we have no doubts that West was entitled to procedural due process in connection with her termination.
 
 
 23
 The issue remaining is whether West received the due process to which she was entitled. The district court answered that question in the affirmative, concluding that West had received adequate due process protection in the form of a pretermination and a post-termination hearing. We agree that these procedures satisfied constitutional mandates.
 
 
 24
 (1) Pretermination Hearing
 
 
 25
 In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court set out the standards for a pretermination hearing. This Circuit reiterated and applied these guidelines and requirements in Powell v. Mikulecky, 891 F.2d 1454, 1458-62 (10th Cir.1989), and Seibert v. University of Oklahoma Health Sciences Center, 867 F.2d 591, 596-99 (10th Cir.1989).
 
 
 26
 The standards for a pretermination hearing are not stringent because of the expectation that a more formal post-termination hearing will remedy any resulting deficiencies. "[T]he pretermination 'hearing,' though necessary, need not be elaborate.... '[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' " Loudermill, 470 U.S. at 545, 105 S.Ct. at 1495 (quoting Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). "[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. 470 U.S. at 545-46, 105 S.Ct. at 1495.
 
 
 27
 A full evidentiary hearing is not required prior to an adverse employment action. Id. at 545, 105 S.Ct. at 1495. The individual entitled to due process protection needs only to be given notice and an opportunity to respond. Id. at 546, 105 S.Ct. at 1495. We have held that pretermination warnings and an opportunity for a face-to-face meeting with supervisors, see Seibert, 867 F.2d at 598, and a conversation between an employee and his supervisor immediately prior to the employee's termination, see Powell, 891 F.2d at 1459, were sufficient to satisfy constitutional requirements.
 
 
 28
 Several circuits have suggested, without so holding, that the due process clause may not require a pretermination hearing when a termination is the result of a bona fide reduction in force, particularly when the reduction involves a large number of employees and is not directed toward just one employee or a small number of employees. See American Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761, 767-68 (D.C.Cir.1987); Praprotnik v. City of St. Louis, 798 F.2d 1168, 1177 (8th Cir.1986), rev'd on other grounds, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The following factors militate against the need for a pretermination hearing in such circumstances: such terminations are not stigmatizing, job performance is not particularly relevant, and pretermination hearings may be impractical. Our case, however, does not present these factors, and thus we need not speculate whether a pretermination hearing would be required in such circumstances.
 
 
 29
 Here, the asserted reduction in force was directed specifically just at West, and West alleged that the reduction was actually just a subterfuge designed to terminate her without establishing the required cause. Such a termination is potentially stigmatizing and a pretermination hearing would provide an important opportunity for her to argue her claim that the reduction in force was a sham.
 
 
 30
 Under very similar facts, the Seventh Circuit concluded that an employee was entitled to a pretermination hearing in Misek v. City of Chicago, 783 F.2d 98 (7th Cir.1986). There, the court stated,
 
 
 31
 [T]he plaintiffs assert that the reorganization was a sham and that their jobs were never abolished. Thus the plaintiffs have sufficiently alleged that they were fired for "cause" to afford them the protections of due process. To hold otherwise would allow government officials to cry "reorganization" in order to circumvent the constitutional and statutory protections guaranteed....
 
 
 32
 Id. at 101.
 
 
 33
 In light of the Tenth Circuit's clear precedent regarding protected property interests for employees who can be terminated only for specific reasons and West's charge that the asserted reduction in force was a sham, we agree with the Seventh Circuit. The fact that Grand County labeled West's discharge a "reduction in force" does not affect her entitlement to a pretermination hearing when she is asserting that the reduction in force was a sham aimed particularly at her. Cf. Goudeau, 823 F.2d at 1431 (Although not specifically addressing entitlement to a pretermination hearing, it concluded generally that "[w]ithout adequate due process protection, an employee ... can never discover whether the reasons offered for her discharge are true--or are false and a mere subterfuge.").
 
 
 34
 Thus, West was entitled to a pretermination hearing. However, the standards the Supreme Court delineated in Loudermill for pretermination hearings are not very stringent, and we agree with the district court that the meetings and consultations in this case satisfied constitutional mandates. The totality of the circumstances here indicate that West knew in advance of her termination that the county attorney proposed to eliminate her job. Furthermore, she had several pretermination opportunities to discuss her potential termination with the new county attorney and other county officials. As we observed in Seibert, "the totality of the procedures and opportunities which the [employer] afforded plaintiff were sufficient to satisfy constitutional requirements. Plaintiff was not fired out of the blue. Plaintiff was not fired for reasons that he did not know. Plaintiff was not fired without being given the 'opportunity to present his side of the story.' " 867 F.2d at 599 (quoting Loudermill, 470 U.S. at 542, 105 S.Ct. at 1494).
 
 
 35
 Here, West met with Coates for two hours on November 18, 1986, after Coates defeated Benge in the election. During this meeting, West later acknowledged, she learned that her job was in jeopardy and she discussed with Coates her rights under Grand County's Personnel Policies and Procedures manual. See R., Deposition of Trisha L. West, Oct. 21, 1988, at 66, 68, 70.[6] A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of Loudermill. Powell, 891 F.2d at 1459. In addition, prior to termination, West also consulted with the Commissioners regarding her rights as a permanent employee. These actions establish that she received both notice and an opportunity to be heard. For these reasons, we affirm the district court's decision that West received an adequate pretermination hearing.
 
 
 36
 (2) Post-termination Hearing
 
 
 37
 "Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point." Id. at 1458. We agree with the district court that West received an adequate post-termination hearing.
 
 
 38
 West appeared before the Commissioners for a grievance hearing. She was represented by counsel, and she presented testimony and witnesses on her behalf. Specifically, she sought to establish that the reduction in force was a subterfuge. To support this contention, she offered former County Attorney Benge's testimony that a full-time secretary was necessary and her own testimony that two individuals are now doing the work that she previously did alone. The Commissioners denied relief on the grounds that West did not present any substantive evidence regarding her allegation that she was terminated because of the election of a new County Attorney.
 
 
 39
 West argues that her post-termination grievance hearing was deficient on three bases: (1) she was not given the opportunity to confront her accusers or to challenge their evidence; (2) the decisionmakers were not impartial; and (3) the Commissioners based their decision on ex parte communications. We reject these claims.[7]
 
 
 40
 First, West complains that she did not have an opportunity to confront and cross-examine witnesses. "While not necessary in every case, 'procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood.' " Walker v. United States, 744 F.2d 67, 70 (10th Cir.1984) (footnote and citations omitted); see, e.g., Adams v. Sewell, 946 F.2d 757, 765 (11th Cir.1991) ("This court has emphasized the importance of cross-examination in due process analysis; post-termination proceedings have been held inadequate because a terminated employee 'had no opportunity to confront and cross-examine his accuser in the presence of the decision maker.' ") (quoting Kelly v. Smith, 764 F.2d 1412, 1415 (11th Cir.1985)); Kelly, 764 F.2d at 1415 (in determining whether a post-termination meeting satisfied due process requirements, court took into consideration that employee had no opportunity to confront and cross-examine his accuser in the presence of the decisionmaker).
 
 
 41
 However, "confrontation and cross-examination ... are not rights universally applicable to all hearings." Wolff v. McDonnell, 418 U.S. 539, 567, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974). In Rosewitz v. Latting, 689 F.2d 175, 177-78 (10th Cir.1982), for example, this Court held that a post-termination hearing before a grievance review board comported with due process despite the fact that the employee was not allowed to confront and cross-examine witnesses against her. Thus, whether the Due Process Clause requires that the terminated employee be offered the right to cross-examine or confront witnesses depends upon the significance and nature of the factual disputes at issue.[8] Here, however, the parties agreed at oral argument that West did not seek to require Coates' attendance at the grievance hearing, nor was there any suggestion that she was inhibited or restricted from doing so. Under these circumstances, West cannot complain of her inability to confront Coates at the hearing.
 
 
 42
 This determination is in accord with the Fourth Circuit's conclusions in Bradley v. Colonial Mental Health and Retardation Services Board, 856 F.2d 703 (4th Cir.1988). In Bradley, the court similarly addressed a contention that employees were denied the opportunity to confront and cross-examine the accusing witnesses in a post-termination grievance procedure. The court focused on the employees' failure to attempt to secure the presence of the accusing witnesses despite the lack of obstacles. Id. at 708. Because the employees presented no evidence other than conclusory statements and did not request the presence of their accusers, the Board did not have a duty to assist them with their cause. Id. at 708-09.
 
 
 43
 Second, West complains that the decisionmakers before whom the post-termination hearing was held were not impartial. Specifically, she argues that the Commissioners at the hearing were biased because they were the same decisionmakers who approved her termination. West has waived this claim, however, because she did not adequately object to the post-termination forum at the time of the post-termination hearing.
 
 
 44
 West's attorney expressed his misgivings regarding the neutrality of the Commissioners on the panel at the grievance hearing, but then stated that he was willing to proceed:
 
 
 45
 If the three of you were involved in the process of the decision to terminate Trish it might be appropriate if there was a neutral arbitrator or neutral hearing officer appointed to hear this grievance instead of having the commission hear it.... [W]e're prepared to present testimony.... I just wanted to raise that for the record--That is a concern that we have. I'm not suggesting that the three of you would be in any way bias[ed] or anything--it just might be an easier situation. If you want to proceed, we're prepared.
 
 
 46
 He then proceeded without either requesting or obtaining a ruling from the Commissioners on his suggestion that they might not be impartial. In doing so, he expressly waived West's right to object to the partiality of the decisionmakers at the grievance hearing.
 
 
 47
 Finally, West's contention that the Commissioners based their decision on ex parte communications is pure speculation that is not supported by the record. Rather, the record indicates that the Commissioners made their decision based upon West's failure to present evidence to substantiate her claim.[9]
 
 
 48
 For the reasons stated above, we affirm the district court's decision that West received an adequate post-termination hearing.[10]
 
 III. CONCLUSION
 
 49
 The decision of the district court is AFFIRMED.
 
 
 
 [1]
 Due to an unanticipated "explosion" of legal work, Coates' secretary ultimately had to spend almost all of her time doing county work and Coates had to hire a part-time file clerk
 
 
 [2]
 For a discussion of what constitutes good faith in the abolition of a civil service or merit system position as compared to what constitutes a guise, subterfuge, or pretense, see James O. Pearson, Jr., Annotation, Determination as to Good Faith in Abolition of Public Office or Employment Subject to Civil Service or Merit System, 87 A.L.R.3d 1165 (1978)
 
 
 [3]
 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [4]
 The district court dismissed without prejudice West's claims that the county violated the Utah Constitution's due process clause and the County Personnel Management Act; breached Utah's public policy, her employment agreement, and the county's implied covenant to act fairly and in good faith; and intentionally inflicted emotional distress
 
 
 [5]
 The manual also provides that "[n]o career service employee may be dismissed from service as a result of a change in the elected administration of the county or for the political expediency of an elected official." Id. § XIV(B)
 
 
 [6]
 The district court found it uncontroverted that, during this meeting, Coates informed West that her position might be eliminated. On appeal, West characterizes this as "a misunderstanding of the undisputed facts" and responds only by saying that Coates had not yet taken office at the time of the meeting and therefore had no authority to make administrative decisions. This is irrelevant, given that Coates had been elected at that time and was to take office on January 5, 1987. Furthermore, we have reviewed the depositions that were submitted as part of the record, and these depositions support the district court's finding
 
 
 [7]
 At oral argument, we asked both sides if West had the ability to appeal the Commissioners' decision on the merits. Although the parties disagreed at the time, they later stipulated that there were no administrative, county, state, or other procedures whereby West could have obtained either appellate or de novo review of the substance of the Grand County Commissioners' findings. The absence of a mechanism to review the merits of her claim, at least in a situation where impartiality is in dispute, would cause us some concern because it would appear to allow the decisionmakers to reach an arbitrary result with no possibility of being challenged. However, we decline to address this issue because it was not raised below
 
 
 [8]
 See, e.g., Melton v. City of Oklahoma City, 879 F.2d 706, 722 (10th Cir.1989) ("perjury allegation was of a serious enough nature that at his hearing [the employee] should have been given the right to confront and cross-examine those who charged him with dishonesty"), vacated and remanded on other grounds on reh'g, 928 F.2d 920 (10th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991)
 
 
 [9]
 In his June 29, 1987 letter to West, the Commission Chairman stated: "You presented no substantive evidence concerning your allegation that you believe the real reason for your termination was because of the election of a new county attorney."
 
 
 [10]
 Because we affirm the district court's ruling that West did receive due process in connection with her termination, we need not address the various claims asserted by the defendants