**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES A. TANASSE, individually;
NADINE B. YOUNG, individually;
YOUNG-TANASSE, INC., and CLUB
ST. GEORGE, INC., dba Chapter
Eleven,

     Plaintiffs-Appellants,

         v.

CITY OF ST. GEORGE; THEODORE
W. SHUMAY, individually and in his
official capacity as City Attorney for
the City of St. George; and GARY G.
KUHLMANN, individually and in his
official capacity as Deputy City
Attorney, City of St. George,

     Defendants-Appellees.

No. 97-4144
(D.C. No. 95-CV-301)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **BARRETT**, and **MURPHY**, Circuit Judges.

---

Plaintiffs James A. Tanasse, Nadine B. Young, Young-Tanasse, Inc., and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Club St. George, Inc.,  appeal the district court's entry of summary judgment in favor of defendants City of St. George, Theodore W. Shumay, Gary G. Kuhlmann, and John Does 1 through 20 on plaintiffs' 42 U.S.C. § 1983 claim.  We affirm.

I.

Tanasse and Young formed Young-Tanasse to manage Club St. George, a private club doing business as Chapter Eleven.  Tanasse obtained business and beer licenses on behalf of the club.

In April 1992, the city fire chief directed plaintiffs to install a sprinkler system in the club.  Plaintiffs stalled for a year, but promised in April 1993 that within the next four months they would move the club to another location and install a sprinkler system, install a sprinkler system at the present location, or close the club.  At the end of the four-month period, nothing had been done and plaintiffs were notified if the sprinkler system was not operational by August 1, action would be taken to consider suspending the club's business and beer licenses.

Plaintiffs sought a temporary restraining order in state court to prevent revocation of the club's licenses or any interference "with the business of said club unless said actions are approved or ordered by a Court of competent jurisdiction."  App. at 514.  The court entered an order on August 4, 1993, preventing the city from revoking the club's licenses at its August 5 hearing        *if* the

sprinkler system was properly installed and plaintiffs posted a bond to cover the water line connection costs. Plaintiffs failed to satisfy either requirement and the city suspended their business and beer licenses on August 5.

The club opened for business on August 6 and was shut down for operating under suspended licenses. Tanasse, the club's corporate designee, was charged with doing business and selling beer without a license. The license suspensions were lifted on August 11 after the sprinkler system was inspected and approved. On October 29, 1993, Tanasse was found guilty in justice court of doing business and selling beer under suspended licenses as a result of the August 6 activity. Following Tanasse's conviction, the club's business license was revoked effective at noon on October 30, 1993, under city ordinance § 5-1-24(C), which provides: "Any business license may be revoked without hearing for any violation of the law made in the course of business where such violation is proved or admitted in a court of law." App. at 604.

Tanasse resigned as an officer of the club, and the city notified Young that the club should designate another agent to hold the club's beer license. Neither Young nor any other corporate designee for the club formally applied for the beer license. Instead, Young appeared at a prescheduled November 4 city council meeting to seek reinstatement of the club's business license with her as the agent. On November 8, the city notified Young by letter that a hearing would be held

before the city council on November 18 at 4:00 p.m. to consider revocation of the club's beer license and to consider reinstatement of the club's business license. At the conclusion of the November 18 hearing, the city denied Young's reinstatement request and revoked the club's business and beer licenses.

On June 16, 1994, in a trial de novo before the state district court, the charges against Tanasse for doing business and serving beer under suspended licenses were dismissed for failure of the prosecution to establish a prima facie case. Plaintiffs initiated this § 1983 action on April 4, 1995, alleging the October 29, 1993, revocation of the club's business license violated plaintiffs' due process rights under the Fourteenth Amendment. Plaintiffs also brought state law claims of interference with prospective economic advantage and malicious prosecution, but later dropped the malicious prosecution claim. The district court entered summary judgment in favor of defendants on the § 1983 claim and then declined to exercise supplemental jurisdiction over the state law interference claims.

II.

We review the grant or denial of summary judgment de novo, applying the same legal standard applied by the district court. See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

-4-

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we examine the factual record in the light most favorable to the nonmoving party. See Wolf, 50 F.3d at 796.

### III.

Plaintiffs bring both facial and as-applied challenges to St. George ordinance § 5-1-24(C). Because plaintiffs' success or failure on their as-applied challenge may narrow the scope of their facial challenge, we first address whether application of § 5-1-24(C) violated plaintiffs' rights to due process. See Renne v. Geary, 501 U.S. 312, 324 (1991) ("But even if one may read the complaint to assert a facial challenge, the better course might have been to address in the first instance the constitutionality of [the challenged statute] as applied. . . . If the as-applied challenge had been resolved first in this case, the problems of justiciability that determine our disposition might well have concluded the litigation at an earlier stage.").

The Fourteenth Amendment prohibits deprivation of life, liberty, or property without due process of law. In examining a § 1983 claim alleging deprivation of property in violation of due process, the court first determines if due process applies, and then determines what process is due. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Plaintiffs' interest in the business and beer licenses was sufficient to invoke due process protection.

> Once licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

Bell v. Burson, 402 U.S. 535, 539 (1971); see Richardson v. Town of Eastover, 922 F.2d 1152, 1156-58 (4th Cir. 1991).

Determination of the extent of pre-deprivation process to which plaintiffs were entitled is governed by the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976):

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Plaintiffs' private interest is the interest in operating a business and, stated more broadly, pursuing a particular livelihood. See Dixon v. Love, 431 U.S. 105, 113 (1977). The Supreme Court has "repeatedly recognized the severity of depriving someone of his or her livelihood." FDIC v. Mallen, 486 U.S. 230, 243 (1988). Because of the nature of this interest, a licensee erroneously deprived of

-6-

a license cannot be made whole by mere reinstatement of the license.  In fact, the interim period between erroneous deprivation and reinstatement can be financially devastating to the licensee.  Yet, while any hardship imposed upon a business licensee because of erroneous deprivation potentially is significant, it does not rise to the level of hardship suffered by a disability recipient whose benefits have been terminated erroneously.  In   Mathews  itself, the Supreme Court ruled a disability recipient was not entitled to a pre-termination evidentiary hearing.       See  424 U.S. at 342.

We next consider the fairness and reliability of the existing pre-revocation procedures, and the probable value, if any, of additional procedural safeguards.  In the present case, this factor weighs heavily and decisively against further pre-revocation process.  In situations where license revocation follows largely automatically from a criminal conviction or indictment, the Supreme Court has considered additional procedures beyond those provided in the underlying judicial proceeding to be of little value in reducing erroneous deprivations.       See  Mallen , 486 U.S. at 241) (pre-deprivation hearing not required under statute authorizing suspension of bank official upon indictment);       Dixon , 431 U.S. at 113-14 (pre-deprivation hearing not required under statute providing for revocation of driver's license upon three suspensions in ten-year period).  The rationale, of course, is that once an independent, albeit preliminary, determination of wrongdoing has

been made, the risk of erroneous deprivation diminishes drastically. See Gilbert v. Homar , 117 S. Ct. 1807, 1814 (1997).

Plaintiffs contend further pre-deprivation process somehow would have decreased the risk of erroneous deprivation. We find no merit to this contention. The revocation followed directly from Tanasse's conviction in a court of law, with all its attendant procedures and safeguards. Although the charges against Tanasse were appealed and later dismissed during a trial de novo, that does not diminish the appropriateness of revocation at the time it occurred. Procedural "due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." Mathews , 424 U.S. at 344; see Burgess v. Ryan , 996 F.2d 180, 183 (7th Cir. 1993) ("Person-specific variations do not cause an otherwise-proper system of procedure to violate the Constitution."). Tanasse has pointed to no pre-revocation procedures that would or could generate greater accuracy of the appropriateness of the revocation. Cf. Richardson , 922 F.2d at 1161. Nothing would be left for him to do at a pre-revocation hearing but to plead his innocence of the crime despite the outstanding conviction, or pray for leniency notwithstanding the conviction.

Lastly, we consider the public interest, including the function involved and the fiscal and administrative burdens the additional or substitute procedural requirement would entail. The government has a significant interest in

maintaining public trust in business institutions and, more particularly, in protecting consumers' interests. To this end, it is material that ordinance § 5-1-24(C) authorizes revocation without hearing *only* when the conviction or admission of wrongdoing involves a criminal act committed "in the course of business." The ordinance therefore ensures a nexus exists between the wrongdoing and revocation of the license.

Plaintiffs contend that in cases in which the deprivation is as severe as it is here, courts typically require substantially more pre-deprivation process. They are incorrect. Due process is satisfied if "some form of hearing is required before an individual is *finally* deprived of a property interest." Mathews, 424 U.S. at 333 (emphasis added). The Supreme Court routinely has held that other licenses or similar property interests may, given a significant government interest, be revoked without a pre-deprivation hearing. See Gilbert, 117 S. Ct. at 1812 ("This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."); Mallen, 486 U.S. at 240 ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation."). The city's interest here in maintaining public

confidence in its business institutions and protecting consumers' interests, financial and otherwise, is at least as great as the State of New York's interest in "preserving the integrity" of horse racing, an interest the Supreme Court deemed sufficiently compelling to justify suspension of a horse trainer without a hearing in Barry v. Barchi, 443 U.S. 55, 64 (1979).

Having determined plaintiffs are not entitled to further pre-revocation process, we next consider if the post-revocation process plaintiffs received was constitutionally adequate. Both the procedures employed at the hearing by the city council and the eighteen-day delay between revocation and the hearing satisfied plaintiffs' rights to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965). With respect to the November 18 hearing, plaintiffs received notice and were afforded an opportunity to present their views, defend their position, and challenge the validity of the revocation. See West v. Grand County, 967 F.2d 362, 369 (10th Cir. 1992). Plaintiffs complain the City never expressly stated they could confront and cross-examine witnesses. There is no indication in the minutes of the meeting, or elsewhere in the record, that plaintiffs made an effort to secure, through compulsory process or otherwise, attendance of any witness at the meeting or sought to confront and cross-examine witnesses actually at the meeting. Nor is there any indication that if plaintiffs had desired to confront their accusers, they

-10-

would have been prohibited from doing so.    See id. (where plaintiff did not compel attendance and there is no indication she was restricted from calling witnesses, plaintiff could not complain of violation of right to confrontation). The city council here took great pains to assure that any person, regardless of viewpoint, was afforded an opportunity to be heard.    See, e.g., App. at 561 ("Ms. Young is entitled to have [the police officer] testify if she wishes to do that."); at 564 (mayor to member of audience, "We'll let you speak if you want to speak."); at 565-66 (council members responded to comments from audience members).

Notwithstanding these procedures, plaintiffs contend the process was not meaningful because under city ordinance, the city council lacked authority to reinstate the club's business license. They premise this argument on § 5-1-19, which provides: "No person who has been denied a license or whose license has been revoked under the provisions of this chapter shall be granted a license under the provisions of this chapter for [a] period of six months following such denial or revocation." App. at 583. It is plain from the minutes of the meeting that all who were present, including council members and the city attorney, were acting under the impression that the council had the authority to reinstate the business license. Any argument to the contrary is speculative in light of the city council's refusal to reinstate the license. Further, ordinance § 5-1-19 is properly interpreted as forbidding only the granting of a new license to one whose license has been

-11-

revoked in the preceding six months, not as barring reinstatement of a license that has been revoked. In fact, revocation was not complete until the deprivation became final, which did not occur until the city council denied reinstatement.

Plaintiffs vaguely reference that the delay between the revocation and the hearing contributed to the deficiency of post-deprivation process. Nowhere, however, do plaintiffs offer substantive argument or legal authority to support this position, and we need not consider it on appeal. See Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1558 n.1 (10th Cir. 1992). The argument lacks merit in any event. In Mallen, the Supreme Court found a conceivable ninety-day delay did not violate due process where deprivation was based on a bank official's indictment. In ruling the delay was not per se contrary to due process notions, the Court stated, "[T]here is little likelihood that the deprivation is without basis. The returning of the indictment establishes that an independent body has determined that there is probable cause to believe that the officer has committed a crime punishable by imprisonment for a term in excess of one year." 486 U.S. at 244. The comparable circumstances here do not render an eighteen-day delay so long that it constitutes a due process violation.

In summary, plaintiffs' due process rights were not violated by the lack of further pre-revocation process. Given the protections afforded Tanasse in the criminal proceeding and conviction that gave rise to revocation of the license, the

risk of erroneous deprivation was small.  Moreover, plaintiffs received a sufficiently prompt opportunity to be heard following deprivation and had ample opportunity to present their case for reinstatement to the city council.  The Constitution requires nothing more in these circumstances. [1]

Plaintiffs also seek to mount a facial attack on § 5-1-24(C).  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987); see City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 774-75 (1988).  In this respect, we note the law was constitutionally applied here. The ordinance provides *only* for revocation of a license without hearing.  The city council obviously interpreted § 5-1-24(c) as authorizing the initial deprivation without a hearing and being silent as to a post-deprivation hearing, which plaintiffs received.

Plaintiffs bolster their facial challenge by arguing the ordinance permits

---

[1] Plaintiffs argue the city council wrongfully considered the history of violations that might separately warrant revocation of the business license.  To the extent these past violations had any role in revocation of the license, plaintiffs had notice of the city's intent to rely on those violations by the city attorney recounting the history at the November 4 meeting at which Young appeared.  We need not consider whether those other violations constituted separate grounds for denial of reinstatement because reinstatement was appropriately denied under § 5-1-24(C).

revocation of a business license for conviction of an offense that is unrelated to the licensee's business. However, as noted, a license may not be revoked under § 5-1-24(C) unless the conviction is for a crime that occurred in the course of the licensee's business. Moreover, it is not disputed that selling beer under a suspended license is an offense committed in the course of business. Thus, plaintiffs' conduct falls comfortably within the constitutional breadth of § 5-1-24(C). The fact that the ordinance might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it invalid. See Salerno, 481 U.S. at 745. It is settled that outside the free speech context, a party may not challenge a statute as overbroad on grounds that although constitutional as applied to plaintiff, it might be unconstitutional as applied to other individuals. See, e.g., United States v. Mendes, 912 F.2d 434, 439 (10th Cir. 1990). Since the ordinance is constitutional as applied to plaintiffs, their facial challenge necessarily fails.

Plaintiffs also contend § 5-1-24(C) is unconstitutionally vague. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982). Thus, we need determine only if the ordinance was vague as applied to plaintiffs. A statute is vague if its prohibitions are not clearly defined, leaving "persons of

common intelligence" to guess at its meaning and necessarily differ as to its application.   See Grayned v. City of Rockford   , 408 U.S. 104, 112 (1972).  Section 5-1-24 very plainly provides that the holder of a business license may lose that license if the holder commits a crime while acting in the course of the business, and is either convicted of that crime or admits that crime in a court of law. Selling beer in one's place of business on the day after the club's business license was suspended is a crime committed in the course of business.  A person of common intelligence would understand the violation and subsequent conviction for that violation would be grounds for revocation of a business license under § 5-1-24(C).   See O'Connor v. City & County of Denver   , 894 F.2d 1210, 1222 (10th Cir. 1990).  As such, the ordinance gave plaintiffs "fair notice" of what it prohibited.   Grayned , 408 U.S. at 112.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-15-