HARRY T. EDWARDS, Circuit Judge,
concurring.
I agree with the majority that this case must be remanded to the District Court for proper consideration of Mr. Thompson’s First Amendment claim. I also agree that we lack subject matter jurisdiction over Thompson’s intentional infliction of emotional distress claims against the District of Columbia Lottery Control Board and the District of Columbia. I write separately, however, to express some concerns over Thompson’s Fifth Amendment claim, which rests on his allegation that he was denied procedural due process when the Board eliminated his position through a reduction in force (“RIF”) without first affording him proper notice and hearing. Thompson’s due process claim raises some challenging issues that do not admit of simple resolution. I think these issues require amplification so that the parties do not go astray in their arguments when the case is heard again by the District Court.
* * * *
The first point that should be emphasized is that the District Court may not need to reach Thompson’s due process claim. The core of Thompson’s complaint is his allegation that the Board retaliated against him for engaging in protected speech. In other words, Thompson charges that his job was eliminated and he was fired because he leveled charges of fraud and misconduct against contractors who had been retained by the Board. If the District Court finds that Thompson’s speech was a matter of public concern, that the governmental interests in efficient Board operations did not outweigh Thompson’s interests as a citizen in commenting on matters of public concern, that Thompson’s speech was a substantial or motivating factor in the Board’s retaliation against him, and that the Board would not have taken the same action absent Thompson’s protected speech, then Thompson will have had a full and fair hearing on his core complaint and he will secure all the relief that he seeks in this law suit. No good purpose will be served for the District Court to decide whether Thompson was also denied procedural due process when he was terminated without a hearing if the trial court determines that Thompson is entitled to relief on his First Amendment claim.
Indeed, given the posture of this case, it would appear that the disposition of the First Amendment claim may dispose of the entire case. If Thompson wins on his First Amendment claim, there is no good reason to address his Fifth Amendment claim. If he loses on his First Amendment claim that the RIF was a pretext, it is hard to fathom what he will gain — in real terms — from an order saying that he was entitled to notice and an opportunity to discuss the RIF with his superiors before he was terminated. No matter. Thompson’s complaint frames his due process claim independently of the alleged First Amendment violation, arguing that his sta *290 tus as a “career service employee” entitled him to due process before being terminated. I therefore accept the majority’s conclusion that Thompson’s Fifth Amendment claim must be addressed if he loses on his First Amendment claim, on the assumption that he may have been denied proper notice and an opportunity to be heard before his job was eliminated by RIF.
MM
It is far from clear that Thompson has a viable claim under the Fifth Amendment. I say this without meaning to prejudge the issue. All that I mean to say is that this case poses some baffling questions with respect to Thompson’s due process claim. The only thing that is clear at this point is that the matter cannot be resolved on the pleadings or on the vague assertions advanced by the parties in their arguments to this court. Should it become necessary for the District Court to resolve the due process claim, the parties must first develop a coherent record and then endeavor to square the facts in the record with existing case law. This will be no mean feat.
Thompson’s claim that he was entitled to pretermination process relies on principles first articulated in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In Loudermill, the Court held that a civil service employee who has a right to continued employment has a constitutionally recognized property interest that entitles him to “some kind of hearing” before he is terminated. Id. at 542, 105 S.Ct. 1487 (internal quotation marks and citation omitted). “The need for some form of pretermination hearing ... is evident from a balancing of the competing interests at stake. These are the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination.” Id. at 542-43, 105 S.Ct. 1487 (citing Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).
The Court made it clear, however, “that the pretermination ‘hearing,’ though necessary, need not be elaborate.” Loudermill, 470 U.S. at 545, 105 S.Ct. 1487. Generally, a full evidentiary hearing is not required if the affected employees are entitled to a full administrative hearing and judicial review after termination. Id. “The essential requirements of due process ... are notice and an opportunity to respond.” Id. at 546, 105 S.Ct. 1487. “To require more than this prior to termination would intrude to an unwarranted extent on the government’s interest in quickly removing an unsatisfactory employee.” Id.
* * * *
Thompson’s dealings with the Lottery Board, at least as he outlines them in his complaint, do not necessarily fit within the compass of Loudermill. In order to determine whether Thompson has presented a viable Fifth Amendment claim, the District Court must determine whether Thompson was deprived of a protected property interest, and, if so, whether he received the process he was due. UDC Chairs Chapter, Am. Ass’n of Univ. Professors v. Bd. of Trustees of the Univ. of the Dist. of Columbia, 56 F.3d 1469, 1471 (D.C.Cir.1995) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). The first inquiry, whether Thompson had a property interest, is a matter of local law. “Property interests are not created by the Constitution, ‘they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.’ ” Loudermill, 470 U.S. at 538, 105 S.Ct. *291 1487; see also Bd. of Regents v. Roth, 408 U.S. 564, 577-78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The second inquiry has two elements. The District Court must first decide, as a legal matter, what procedures were required, and second, as a factual matter, whether the procedures available to Thompson — if any — met the legal requirement.
jfs ^ ^
In determining whether Thompson had a protected property interest, the District Court will be forced to decide whether to focus on the time before or after Thompson was transferred to the new position that was eliminated by the Board during the purported RIF. If Thompson’s earlier position is relevant for assessing his due process entitlements, and if the District Court finds that he was a career service employee subject only to termination for cause, then Loudemnill suggests that his expectation in continued employment constituted a protected property interest. See Loudermill, 470 U.S. at 538-39, 105 S.Ct. 1487. On the other hand, if the relevant focal point is Thompson’s-RIF’d position, it is less clear whether he enjoyed a property right.
At least two decisions issued by this court have suggested that the existence of a property right in a government job— particularly a position eliminated under the auspices of the District’s 1996 Budget Act, as Thompson’s position ostensibly was — does not survive a fiscally induced layoff. See Wash. Teachers’ Union Local # 6 v. Bd. of Educ. of the Dist. of Columbia, 109 F.3d 774, 779-80 (D.C.Cir.1997); Am. Fed’n of Gov’t Employees v. Office of Pers. Mgmt., 821 F.2d 761, 767 (D.C.Cir.1987). I suppose that the argument under this line of analysis might be that an employee cannot hold a “property right” tied to a RIF’d position, because a person in a position slated for a RIF has no reason-, able expectation of continued employment. I doubt that the case law of this circuit means to go this far, however. To date, the most that we have said is that “it is by no means obvious that a property interest.... survive[s] a reduction-in-force.” Am. Fed’n of Gov’t Employees, 821 F.2d at 767. And in Washington Teachers’ Union, the court suggested only that “enactment of the 1996 Budget Act and of the emergency rules” may have “extinguished [the RIF’d employees’] property interests.” 109 F.3d at 779. It would be a mistake to make too much of these decisions.
It is noteworthy that our sister circuits have not shared our doubts about the survival of a property interest after a RIF, especially where the former employee asserts that the RIF was really a subterfuge for firing a particular individual. In West v. Grand County, 967 F.2d 362, 367 (10th Cir.1992), for example, the Tenth Circuit explained that it had “no doubts” that an employee alleging a pretextual RIF maintained her protected property interest, arguing that the very function of a hearing would be to determine whether or not the RIF had been legitimate. Labeling an employee’s termination “a ‘reduction in force’ does not affect her entitlement to a pretermination hearing when she is asserting that the reduction in force was a sham aimed particularly at her.” Id. at 368. The Seventh Circuit employed similar reasoning in Lalvani v. Cook County, 396 F.3d 911 (7th Cir.2005). The court emphasized that “the mere intonation of the acronym ‘RIF’ ” does not avoid the need for a due process hearing, the very purpose of which is “precisely to find out whether the termination under the auspices of a RIF was permissible or not.” Id. at 915 (citations and quotations omitted); see also Whalen v. Mass. Trial Court, 397 F.3d 19, 26 (1st Cir.2005) (stating that where “it seems inescapable that [an employee’s] job *292 performance” influenced selection for a reorganization layoff, it is fundamental “that some process is due”); Misek v. Chicago, 783 F.2d 98, 101 (7th Cir.1986) (“Accordingly, absent good cause, [RIF’d employees] were improperly dismissed unless on remand it should be determined that their discharge was pursuant to an actual reorganization of the agency.”).
This court has yet to determine what process is due when an employee contends that his RIF was a subterfuge. We have merely suggested that the extent of necessary pretermination process may depend upon the number of individuals subject to a RIF. See Wash. Teachers’ Union, 109 F.3d at 780-81; UDC Chairs, 56 F.3d at 1474 (“Where, as here, the deprivation turns on a policy decision and not on an individual’s characteristics, a pre-deprivation hearing would do little to reduce the risk of erroneous deprivation of the [employees’] interests.”); see also Whalen, 397 F.3d at 25 (“[B]ecause reorganizations often affect numerous employees, the governmental interest in efficient administration may weigh more heavily in such circumstances.”). It is significant, however, that this court has never rejected the principle enunciated in West, i.e., that an otherwise protected civil service employee alleging a pretextual RIF retains his protected property interest and, thus, may insist on notice and an opportunity to respond. See West, 967 F.2d at 367.
In this case, then, the question whether Thompson held a protected property interest in his pre-transfer position will ante-cede any further analysis. Whether or not a property interest survives a RIF, Thompson will have no entitlement to notice and a hearing of any sort if he never had a property interest in the first place. Moreover, the facts alleged in this case are more complicated than those presented in other circuits’ cases dealing with allegedly pretextual RIFs. Whereas those cases dealt with individuals who occupied protected positions slated for elimination, they do not provide insight into how to treat an employee who claims the sham was his transfer from a protected position into a doomed position, not selection of the position to be RIF’d. The District Court must consider this matter on remand in determining whether Thompson had a protected property right.
sft % #
If the District Court finds that Thompson had a protected property right, it must next determine what process he was due. It is important to note that courts finding a continued property interest in RIF’d positions have demanded only the most skeletal pretermination process. “The standards for a pretermination hearing are not stringent because of the expectation that a more formal post-termination hearing will remedy any resulting deficiencies.” Id. Following the Court’s holding in Loud-ermill, see 470 U.S. at 546, 105 S.Ct. 1487, the West court noted that a “full evidentia-ry hearing is not required,” but rather, “notice and an opportunity to respond” suffices to meet the employer’s due process burden. West, 967 F.2d at 367. The court therefore held that the plaintiffs opportunity to “discuss her potential termination” with superiors represented adequate pretermination process for a RIF’d employee, especially where the employee later received a formal grievance hearing before presumptively neutral decisionmak-ers. Id. at 368-69.
While the availability of post-deprivation proceedings may limit how much preter-mination process is due, the converse is also true. The Seventh Circuit, for example, acknowledged that “when there is an opportunity for a full post-termination hearing, due process does not require an *293 employer to provide full ‘trial-type rights.’ ” Baird v. Bd. of Educ. for Warren Comm’ty Unit Sch. Dist. No. 205, 389 F.3d 685, 690-91 (7th Cir.2004). But the court further held that “[a] state law' breach of contract claim is not an adequate post-termination remedy for a terminated employee who possesses a present entitlement and who has been afforded only a limited pre-termination hearing.” Id. at 692. To avoid granting substantial pre-deprivation process to an employee with a present entitlement to his job, an employer must provide post-deprivation procedures that “are characterized by promptness and by the ability to restore the claimant to possession.” Id.
If the District Court reaches the ultimate question — whether the Lottery Board denied Thompson process that he was due — its answer will depend on a critical examination of what pre-deprivation processes were available to Thompson, and the extent to which their efficacy was bolstered by the promise of more formal proceedings down the road. The inquiry will be fact-intensive, focusing on whether Thompson received notice of his precarious employment situation; whether he conferred with superiors about his status; and, if he did not confer with his superiors, whether he had the opportunity to do so.
These threshold questions are important, because, at least based on the pleadings, it is impossible to tell precisely how much “notice” Thompson received in advance of his job moves and ultimate termination, and whether he talked 'with his superiors about his situation. Indeed, it is unclear whether Thompson even contends that he was foreclosed from contesting his transfer to the job that was eliminated. It may be that Thompson was unaware that the job into which he was transferred was unprotected, but that remains to be determined.
In answering these questions, the District Court will also néed to ascertain exactly what post-deprivation procedures were available to Thompson. For example, it appears that, at the time of the events giving rise to this law suit, employees alleging retaliatory RIFs could “institute a civil action in the Superior Court,” which could impose injunctive or monetary remedies. D.C. CODE. § l-616.3(c) (1998 Repl.). An action initiated under that provision would “[ojperate as an exhaustion of the employee’s administrative remedies” and “[cjonstitute the employee’s exclusive remedy under the laws of the District.” Id. § l-616.3(e). It is unclear whether Thompson qualified for these procedures'— or, alternatively, whether a comparable provision applied — and whether he had access to whatever procedures were available. It is also unclear whether the procedures statutorily accorded to Thompson contained adequate safeguards to buttress whatever less formal notice-and-hearing opportunities were available to him before his termination.
* * * *
There is reason to believe that the District Court’s resolution of Thompson’s First Amendment claim will dispose of this case. That will be fortunate indeed, because the Fifth Amendment claim raises some perplexing questions that will not be easily resolved, especially on a spare and confusing record like the one that is now before the court.