**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 6 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENH CIRCUIT

---

BETTY McCLURE,

      Plaintiff-Appellee/Cross-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 16, MAYES COUNTY, OKLAHOMA, also known as Salina Public School District,

      Defendant-Appellant/Cross-Appellee,

MARION STINSON and DENNIS WESTON,

      Defendants-Cross-Appellees.

LARRY MILLS, JOE BROWN, and BILLY RICE,

      Defendants.

Nos. 99-5029
99-5031

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 97-CV-825-B)

---

Mark S. Rains (Jerry A. Richardson with him on the briefs) of Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for Defendant-Appellant /Cross-Appellee and Defendants-Cross-Appellees.

Phyllis L. Walta of Walta & Walta, Enid, Oklahoma, for Plaintiff-Appellee/Cross-

Appellant.

Before **SEYMOUR**, Chief Judge, **ALARCÓN**,* and **BALDOCK**, Circuit Judges.

**SEYMOUR**, Chief Judge.

Betty McClure brought this action under 42 U.S.C. § 1983 against Independent School District No. 16 (the District), also known as the Salina Public Schools, and the five members of the Salina Board of Education (the Board). Mrs. McClure alleged that the termination of her employment as an elementary school principal with the District deprived her of her constitutional right to procedural due process. The district court granted summary judgment for Mrs. McClure in part but held that the individual board members were entitled to qualified immunity. Both sides appeal. We affirm in part, reverse in part, and remand for further proceedings.

**I**

A review of the record reveals the following facts, many of which are

---

* The Honorable Arthur L. Alarcón, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

undisputed. Mrs. McClure has a college degree in elementary education and a Master's degree in special education, as well as post-Master's degrees in psychometry[1] and school administration. After working for twenty years in other school districts, she worked for six years as an elementary school principal in the Salina school system. During her sixth year, the 1995-96 school year, she was evaluated by the then-superintendent of schools, Tom Merritt, and given an "excellent" rating. Her contract was renewed for the 1996-97 school year in February 1996 by a unanimous vote of the Board.

Her troubles apparently began as a result of her activities on behalf of the District to obtain additional monies for the school system under the Impact Aid Act.[2] Due to the efforts of Mrs. McClure and another individual, the District received well over one million dollars in Impact Aid funds. Superintendent Merritt, who had authorized the applications for additional funds, asked the Board to reward Mrs. McClure and the other individual for their efforts with payments of one percent each of the monies received. The Board unanimously approved the

---

[1] A psychometrist performs educational diagnostics used in special education programs to evaluate a child's special needs and to develop a plan of improvements.

[2] The Impact Aid Act provides funds to school districts that are financially burdened by federal ownership of property within the district that reduces the district's tax base and/or increases the student population. *See generally Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1167-68 (Fed. Cir. 1995).

payments in July 1995. During the course of the 1995-96 school year, Mrs. McClure received approximately $10,000 to $12,000 from the funds received by the District that school year.

The Board subsequently began to question the payments because the amounts were higher than anticipated.[3] They voted to disprove any payments for monies received in the 1996-97 school year. Superintendent Merritt resigned in May 1996. The Board held an executive session regarding the Impact Aid applications in June of that year and then tabled any action to investigate the matter further.

A new superintendent, Vol Woods, was hired to replace Mr. Merritt in early July 1996. On July 29, Mr. Woods gave Mrs. McClure written notice that cause might exist for her dismissal and suspended her with pay. On August 7, the Board directed Mr. Woods to give Mrs. McClure written notice of the reasons for her possible dismissal and to notify her of her right to request a hearing. On August 9, Mr. Woods sent the notification outlining the following reasons for Mrs. McClure's possible dismissal:

---

[3] The record contains handwritten notes kept by the administrative secretary for the District, Carmen Sanders, that chronicle the events leading up to this lawsuit. These notes state that "people" resented the payments. *See* Aplt. App., vol. I at 261. The notes and other record evidence indicate that the conduct of many of the participants in the underlying events was of the sort one would expect from the students attending the schools rather than the adults administering them.

1. School employees have smelled liquor on your breath during school hours.

2. You have violated the School District's no smoking policy by smoking on school grounds during regular school hours.

3. You have allowed and accompanied teachers off of the school grounds during regular school hours, when those teachers should have been attending to duties during their planning periods, for you and the teachers to smoke.

4. You have often left school grounds without permission.

5. The majority of teachers at the elementary school have lost confidence in your administrative leadership.

6. You are frequently gone from the school and are unavailable for assistance to your teachers in your building.

7. You manage employees in your building by intimidation and fear.

8. You have used vulgar language to your employees in front of other employees.

9. You have personally brought liquor onto the school premises.

10. You belittle and humiliate subordinate employees.

11. You have improperly reviewed personnel files of School District employees.

12. The Board of Education lacks confidence in your abilities as an administrator.

Aplt. App., vol. I at 133-34.[4]

---

[4] The district court observed that allegations 1, 2, 5, 6, 10 and 12 were supported by the testimony of live witnesses at Ms. McClure's due process hearing or by other evidence, and that Ms. McClure had admitted to allegation

Mrs. McClure requested a due process hearing, which was held on August 29, 1996. She was present and represented by counsel, who objected to the participation of all five Board members due to bias and particularly to the participation of Marion Stinson and Dennis Weston on the ground that they had previously expressed a bias against Mrs. McClure. The attorney for the District, Doug Mann, while stating his view that the Board had the right to serve as fact finder, responded that members who were biased or who could not decide solely on the evidence should disqualify themselves. No one did.

Mr. Mann sought to introduce affidavits from thirteen District employees making various accusations against Mrs. McClure. Mrs. McClure's attorney then moved to have the affidavits barred on the ground that their admission denied her the right to cross-examination. Mr. Mann responded that the affiants had refused to appear in person and, because the Board had no subpoena power, he could not force them to provide live testimony. Approximately half of the affiants were in fact present at the hearing but did not testify. The affidavits in general made broad, conclusory allegations stating that the affiants had smelled liquor on Mrs. McClure's breath at school on unspecified occasions, that she smoked cigarettes

---

9. As Mrs. McClure points out on appeal, however, the Board did not find allegation 9 established by credible evidence. This allegation apparently was based on an incident years prior to the hearing in which Mrs. McClure brought a margarita to school locked in the trunk of her car and gave it directly to another teacher after school hours, who placed it in her car trunk.

in her office after 3:00 p.m. on school days and occasionally left school grounds with other teachers to smoke elsewhere, that she used vulgar language in front of school staff, and that her management style was one of fear and intimidation.

The Board presented three live witnesses, Cathy Bennett, Janet Morgan, and Judy Buster. Ms. Bennett was a teacher who was supervised by Mrs. McClure and whom Mrs. McClure had put on a plan of improvement in March 1996. She testified on direct examination that she had smelled liquor on Mrs. McClure's breath, that she had seen Mrs. McClure smoking during the school day in her office several times, and that Mrs. McClure was difficult to contact about school problems. On cross-examination Ms. Bennett became upset, left the stand, and refused to answer any more questions. Janet Morgan also gave live testimony. She is Cathy Bennett's daughter and admitted that she was angry with Mrs. McClure for putting her mother on a plan of improvement. The third live witness, Judy Buster, was an elementary teacher who testified that she smelled liquor on Mrs. McClure's breath back in 1994-95, had seen her smoking in her office, and had heard her use vulgar language. She also stated that Mrs. McClure was intimidating and often away from the building. Mrs. McClure presented testimony from several witnesses, all of whom were cross-examined.

The Board went into executive session and returned to vote unanimously to dismiss Mrs. McClure immediately. She subsequently applied for employment in

public school systems within an eighty mile radius of Salina, sending out fifty to seventy resumes. After these attempts were unsuccessful, Mrs. McClure took early retirement and filed this lawsuit.

The district court granted summary judgment for Mrs. McClure on her claim that the due process hearing was rendered constitutionally inadequate by her inability to confront and cross-examine the witnesses against her, and awarded her both nominal and actual damages. The court also determined that Mrs. McClure had presented a fact issue on her allegation that she was denied the right to an impartial tribunal because two of the five Board members at her hearing were biased against her, but then held this claim mooted by the holding in her favor on the confrontation issue. Finally, the court held that the individual Board members were entitled to qualified immunity and that Mrs. McClure had presented no evidence to support an award of punitive damages against them in any event.

The District argues on appeal that the district court erred in holding as a matter of law that a due process deprivation occurred when the District presented affidavits at Mrs. McClure's termination hearing from affiants whom Mrs. McClure was not allowed to cross examine. The District also asserts that the court erred in awarding Mrs. McClure more than nominal damages on her due process claim despite evidence that she would have been terminated even if no due process violation had occurred. Mrs. McClure cross-appeals, contending that

the court erred in granting the two individual Board members qualified immunity

on her claim of bias and that she presented sufficient evidence to support an

award of punitive damages against them.  In addition, Mrs. McClure objects to the

damages awarded, asserting that the court erred in giving her only nominal

damages for her mental pain and suffering and in calculating her compensatory

damages.


## II


We review de novo the district court's grant of a motion for summary

judgment, *see Ben Ezra, Weinstein & Co., Inc. v. America Online, Inc.*, 206 F.3d

980, 984 (10th Cir. 2000), and its determination that an issue is moot, *see*

*Anderson v. United States Dep't of Health and Human Servs.*, 3 F.3d 1383, 1384

(10th Cir. 1993).  We address each argument of the parties in turn.


### A. Use of Affidavits

Defendants do not challenge on appeal the district court's determination

that Mrs. McClure had a property interest in her job.  They contend instead that

the use of affidavits did not deprive her of due process.  We disagree.

The District presented live testimony from three witnesses and offered into

evidence thirteen affidavits from witnesses who had refused to provide live testimony and be subject to cross-examination. Although the hearing at issue was a pretermination hearing, it was the only one provided to Mrs. McClure. Consequently, our due process inquiry is governed by the requirements applied to post-termination hearings. The District does not argue to the contrary.

This court has indicated in dicta that "[a] 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) (quoting *Melton v. City of Oklahoma City*, 928 F.2d 920, 939 (10th Cir. 1991) (en banc) (Logan, J., dissenting)); *see also Langley v. Adams County*, 987 F.2d 1473, 1480 (10th Cir. 1993) (same). We have stated elsewhere that "[w]hile not necessary in every case, procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood." *West v. Grand County*, 967 F.2d 362, 369 (10th Cir. 1992) (quoting *Walker v. United States*, 744 F.2d 67, 70 (10th Cir. 1984)).[5] *West* observes that "whether the Due Process Clause requires that the terminated employee be offered

---

[5] The District contends that cases discussing the deprivation of one's livelihood are distinguishable because Mrs. McClure was only deprived of one specific job. We disagree. Our cases use the term "livelihood" in the context of employment termination identical in all relevant respects to that at issue here. *See, e.g., West v. Grand County*, 967 F.2d 362, 369 (10th Cir. 1992); *Melton v. City of Okla. City*, 879 F.2d 706, 721 (10th Cir. 1989); *McGhee v. Draper*, 564 F.2d 902, 911-12 (10th Cir. 1977).

the right to cross-examine or confront witnesses depends upon the significance and nature of the factual disputes at issue." *Id. See also Prebble v. Brodrick*, 535 F.2d 605, 616 (10th Cir. 1976) (where information from persons not present at hearing concerns an important issue in dispute, due process objection may well be valid).

We have also held that charges depriving a plaintiff of her livelihood by attacking her morality and fitness as a teacher are sufficiently serious to require cross-examination. *See McGhee v. Draper*, 564 F.2d 902, 911 (10th Cir. 1977). There we concluded that because the termination decision was based on accusations that "might stain a reputation and threaten a livelihood," "confrontation and cross-examination were essentials of due process which should not have been denied." *Id.* at 911-12. In this case, as in *McGhee*, the termination decision was based on charges that would stain the reputation of an elementary school principal and threaten her livelihood. As the district court pointed out, "I think we've got some morality questions here where we're talking about either drinking on the job or coming to school in an inebriated condition . . . which I understand the plaintiff categorically denies." Aplt. App., vol. II at 425. We agree with the district court that these accusations, which the Board ostensibly considered sufficiently serious to warrant dismissal, were likewise sufficiently serious to warrant cross-examination.

Although the District argues that the district court's conclusion is contrary to controlling decisions of this court, the cases on which the District relies are factually distinguishable. In *West*, for example, we recognized "the importance of cross-examination in due process analysis" and cited cases in which termination proceedings were held inadequate because the opportunity to confront and cross-examine was denied, although we acknowledged that those rights were not "universally applicable to all hearings." *West*, 967 F.2d at 369. We did not address whether the plaintiff should have been offered the right to cross-examine, however, because the plaintiff had waived her right to complain when she did not seek the attendance of the missing witness at the hearing and was not restricted from doing so. *See id.* In *Meder v. City of Okla. City*, 869 F.2d 553, 555 (10th Cir. 1989), *abrogated on other grounds by American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999), we concluded that the lack of cross-examination did not result in a denial of due process because the plaintiff had admitted facts that made cross-examination unnecessary. Finally, while we concluded in *Rosewitz v. Latting*, 689 F.2d 175 (10th Cir. 1982), *abrogated on other grounds by American Mfrs.*, 526 U.S. 40, that denial of the right to cross-examination in the grievance procedure at issue did not deprive the plaintiff of procedural due process, we did not address the nature of the accusations against the plaintiff, or give them any

weight in balancing the interests involved.[6] These cases are therefore of little relevance to the facts before us now.

The District also asserts the district court erred by applying what the District describes as a "bright line" rule under which any use of an affidavit in an administrative due process hearing is a per se denial of procedural due process. This characterization fails to take the relevant record into account. The court commented upon its holding at a proceeding shortly thereafter, reviewing the uncontroverted evidence and reiterating its conclusion that "where issues of morality and/or professional ethics were involved as here in the allegations, . . . procedural due process under the Fourteenth Amendment compelled the right of cross-examination." Aplt. App., vol. II at 454. The court thus made clear that its ruling was based on the particular facts before it rather than on application of a bright line rule. In any event, the uncontroverted evidence of the seriousness of the charges and the risk of error, particularly under the circumstances existing at the hearing itself, support the court's conclusion that due process required cross-examination here.

---

[6] Unlike the present case, the defendant in *Rosewitz* provided its employees with a five-step grievance procedure that offered several opportunities to present a defense, to have a hearing before a grievance review board, and internal review of the board's decision through a personal interview. *See Rosewitz*, 689 F.2d at 176 & n.1. We pointed out that as a result, the risk of an erroneous deprivation was not great. *See id.* at 177.

## B. Procedural Due Process Damages

The district court held a bench trial on the issue of damages for the due process violation and awarded Mrs. McClure lost wages and benefits for the 1996-97 school year. In so doing, the court stated that while admissible evidence independent of the thirteen affidavits supported Mrs. McClure's termination, it was "speculative whether or not Plaintiff would have been terminated had that cross-examination been permitted." Aplt. App., vol. I at 399. The court denied the District's request to put on evidence through school board members that the board would have reached the same decision even without the thirteen affidavits. The court stated its belief that because Mrs. McClure had been denied the opportunity to develop her defense through cross-examination, there was no way of knowing what the outcome would have been and the evidence was therefore irrelevant. We review the district court's legal conclusions de novo and its findings of fact for clear error. *See Naimie v. Cytozyme Lab., Inc.*, 174 F.3d 1104, 1109 (10th Cir. 1999).

On appeal the District argues the court erred in awarding compensatory relief absent a showing by Mrs. McClure that her damages were caused by the due process violation, citing *Carey v. Piphus*, 435 U.S. 247 (1978). The District also asserts the court erred in refusing to admit the testimony from board members that they would have decided to terminate Mrs. McClure in any event. Finally the

District contends that because there was evidence tending to show it would have terminated Mrs. McClure following a proper hearing, the matter should be remanded for an award of nominal damages only.

Our consideration of these arguments is guided by *Carey* and its progeny. In *Carey*, the Supreme Court held that when a procedural due process violation occurs and adverse action results, damages for injuries caused by the adverse action may not be recovered if the defendant can prove the action would have been taken even absent the violation. *See id.* at 260 ("in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the [adverse action]"). The Court cited *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 285-87 (1977), and *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 270-71 & n.21 (1977), in support of this proposition. *Mt. Healthy* and *Village of Arlington Heights* make clear that once a plaintiff establishes a constitutional violation, the burden shifts to the defendant to show by a preponderance of the evidence that it would have reached the same result absent the violation. *See Mt. Healthy*, 429 U.S. at 285-87 (once plaintiff shows infringement of constitutional right, defendant must "show[] by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the [constitutional violation]"); *Village of Arlington Heights*, 429 U.S. at 271 n.21 (proof of constitutional violation shifts to defendant the "burden of

-15-

establishing that the same decision would have resulted even had [the constitutional violation not occurred]").  Accordingly, the District is incorrect in arguing that Mrs. McClure bears the burden of proving that her damages resulted from the District's unconstitutional conduct.  To the contrary, to avoid liability for the damages resulting from its denial of Mrs. McClure's constitutional right to due process,  the District must establish, by a preponderance of the evidence, that it would have reached the same termination decision in any event.  Unless the defendant carries that burden, the plaintiff is entitled to recover damages for the injury caused by the defendant's adverse action.  *See* Carey, 435 U.S. at 259 ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."); *see also, e.g., Dill v. City of Edmond*, 155 F.3d 1193, 1209 (10th Cir. 1998) (plaintiff entitled to compensatory damages for adverse action when defendant failed to establish adverse action would have occurred even if due process had been provided).

We agree with the District, however, that the district court erred in refusing to consider the District's evidence that the school board would have made the same decision even in the absence of the constitutional violation.  Because the Supreme Court has held it is the defendant's burden to make this showing in order to avoid liability for compensatory damages, the District is entitled to present

evidence relevant to satisfying that burden. In *Carey* the plaintiffs adopted the same position taken by the district court here and argued that injury should be presumed because it could never be known what result the constitutionally correct proceeding would have produced. *See Carey*, 435 U.S. at 261 n.16. The Court rejected this argument and we must do so as well. We remand the issue of damages for the denial of Mrs. McClure's procedural due process rights in order to provide the District the opportunity to establish by a preponderance of the evidence that it would have reached the same decision had the constitutional violation not occurred.

In her cross-appeal, Mrs. McClure contends the district court erred in failing to award her damages for emotional distress. The court's refusal to do so was based on its finding that these damages were caused by her termination rather than by the deprivation of her right to confront and cross-examine the witnesses against her at the termination hearing. In a proper case, however, a plaintiff may recover such damages by "producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself." *Id*. at 263. Upon review of the record, we agree with the district court that Mrs. McClure has not shown her mental damages were caused by the due process deprivation rather than her termination.

Mrs. McClure may nonetheless be entitled to emotional distress damages if,

on remand, the District fails to show by a preponderance of the evidence that it would have terminated her employment even absent the violation of her confrontational rights. *See Dill*, 155 F.3d at 1209. In that event, as discussed above, Mrs. McClure will be entitled to all the compensatory damages flowing from her termination because her termination will have directly resulted from the denial of due process.

Mrs. McClure also argues that the district court erred in limiting her compensatory damages to the 1996-97 school year on the ground that she had failed to mitigate her damages. "Unquestionably, wrongfully discharged claimants have an obligation to use reasonable efforts to mitigate their damages." *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980). "A claimant is required to make only reasonable exertions to mitigate damages, [however,] and is not held to the highest standards of diligence. It does not compel him to be successful in mitigation. It requires only an honest good faith effort." *Id.* (citations omitted).

The employer bears the burden of showing that the employee did not exercise reasonable efforts to mitigate damages. *See id.* To satisfy its burden, "the [employer] must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed

to use reasonable care and diligence in seeking such a position." *Id.* Our review of the record convinces us that the district court erred under the above standards in finding that Mrs. McClure had not mitigated her damages.

Mrs. McClure presented undisputed evidence that she sent out fifty to seventy applications seeking employment with every school district in a sixty to ninety mile radius.[7] She was never called for an interview and received no feedback. The only response she did receive was a verbal one from an administrator who said he could not take a chance on her with the kind of cloud she had hanging over her head. Although the district court faulted Mrs. McClure for failing to specifically seek a teaching position in special education when special education teachers were in high demand, her resume clearly indicated her qualifications in that area. Moreover, Superintendent Woods testified on behalf of the District that he did not want to rehire Mrs. McClure and equivocated when asked whether he would hire a special education teacher subject to the accusations he had made against her. In sum, the District has not established that positions were available to Mrs. McClure in her circumstances, nor has the District shown that she did not use reasonable diligence in her efforts to find work. Accordingly, we hold the district court erred in determining that she failed to mitigate her

---

[7]Her husband was employed as a school superintendent in a neighboring district and she therefore sought a position within driving range.

damages.

### C. Biased Tribunal

The district court held that Mrs. McClure had created a fact issue as to whether two members of the school board, Mr. Stinson and Mr. Weston, were impermissibly biased against her, thus denying her the procedural due process right to an impartial tribunal. The District does not challenge this ruling on appeal. The district court further held this claim was mooted by the grant of summary judgment for Mrs. McClure on her allegation that she was denied her right to confront and cross-examine the witnesses against her.

In light of our treatment of the confrontation issue, we conclude the biased-tribunal claim is no longer moot. We held in Part II B above that, while the court properly granted summary judgment for Mrs. McClure on her confrontation claim, the court erred with respect to that claim in denying the District an opportunity to establish it would have reached the same result absent the deprivation of Mrs. McClure's confrontational rights. If the District is successful on remand in bearing this burden and avoiding liability for compensatory damages on this claim, Mrs. McClure may persuade the fact finder that she was denied her right to an unbiased tribunal and is therefore entitled to compensatory damages on the latter claim. We therefore remand for further proceedings on both claims.

## D. Qualified Immunity

We turn to the district court's grant of qualified immunity to the individual defendants. "'[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hicks v. City of Watonga*, 942 F.2d 737, 749 (10th Cir. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The district court summarily granted Board members Stinson and Weston qualified immunity on Mrs. McClure's claim that their participation in the termination decision deprived her of the right to an impartial tribunal. In support of that claim, Mrs. McClure presented evidence that those defendants had expressed their determination to remove her from her position prior to the termination hearing. The record contains an affidavit by Tom Merritt, the District Superintendent who resigned in May 1996, stating that Board member Stinson told Mr. Merritt in the spring of 1996 that he wanted Mrs. McClure gone and that he had enough proof to "fire her on the spot." Aplt. App., vol. I at 243. The affidavit also states that Board member Weston said in the spring of 1996 in Mr. Merritt's presence that he wanted Mrs. McClure gone and would pay a large amount of money to "get rid of her." *Id.* at 244. Mrs. McClure argues on appeal that the court erred in granting summary judgment on the qualified immunity

issue.  We agree.

It is clear that at the time the hearing took place in 1996, procedural due process required an impartial tribunal:

> The Due Process Clause entitles a person to an impartial and disinterested tribunal . . . . This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.  The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law.  At the same time, it preserves both the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done, by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (citations and internal quotations omitted).

It was equally clearly established in 1996 that statements such as those allegedly made by the individual defendants here are evidence of a biased tribunal.  In *Staton v. Mayes*, 552 F.2d 908 (10th Cir. 1977), we held that "statements on the merits by those who must make factual determinations on contested fact issues of alleged incompetence and willful neglect of duty, where the fact finding is critical . . . left no room for a determination that there was a decision by a fair tribunal, with the appearance of fairness." *Id.* at 914-15.  We further addressed the elements of an unbiased tribunal in *Hicks* and reiterated our

-22-

holding that public statements by a decisionmaker prior to a termination hearing that demonstrate actual bias with respect to the factual matters to be adjudicated, raise a genuine issue of fact on a claim that a plaintiff was deprived of the right to an impartial tribunal. 942 F.2d at 746-48.

Although the District concedes on appeal that Ms. McClure raised a fact issue on the biased tribunal claim, the District and the individual defendants argue that qualified immunity was properly granted because the statements upon which that claim is based are not sufficient to show the bias required to state a claim for relief. Defendants' argument is both inconsistent with their concession and legally incorrect. As we pointed out in *Staton*, statements like those alleged here are not mere opinions on policy issues related to the dispute, nor are they simply reiterations of charges made during an investigatory stage. *See Staton*, 552 F.2d at 914. Rather, they reveal decisionmakers who publicly stated their intent to terminate Mrs. McClure's employment prior to the hearing at which the matter of her termination was to be decided. "[A] due process principle is bent too far when such persons are then called on to sit as fact finders and to make a decision affecting the property interests and liberty interests of one's reputation and standing in his profession." *Id*. at 915. Accordingly, we conclude that the statements attributed to Board members Stinson and Weston raise a genuine issue of material fact as to whether they were biased when they sat on the tribunal

which voted to terminate Mrs. McClure's employment.[8]  As noted above, "[t]he law is clearly established that a person who is biased in fact may not sit on a quasi-judicial tribunal." *Hicks*, 942 F.2d at 751.  We therefore reverse the grant of summary judgment on the claim of qualified immunity.[9]

## III

In sum, we affirm the district court's ruling that Mrs. McClure was deprived of her constitutional right to confront and cross-examine the witnesses against her by the use of affidavits at her termination hearing.  We remand for further proceedings on this claim to allow the District the opportunity to establish

---

[8] We note that the presence of even one biased member on a tribunal is sufficient to deprive a plaintiff of procedural due process.  "Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured." *Hicks*, 942 F.2d at 748 (quoting *Cinderella Career & Finishing Sch., Inc. v. F.T.C.*, 425 F.2d 583, 592 (D.C. Cir. 1970)).

[9] Alternatively, the district court summarily held that even if the claims against Board members Stinson and Weston were to go to a fact finder, the record contained no evidence that they acted with malice in voting to terminate Mrs. McClure and she therefore could not obtain punitive damages from them.  In view of the summary treatment of the issue by the district court below, the parties' failure on appeal to address the evidence with respect to punitive damages, and our conclusion that the matter must be remanded for further proceedings on Mrs. McClure's claims against both the District and the individual defendants, any ruling on the matter at this stage of the litigation would be premature.  We therefore leave the issue of punitive damages open for further proceedings on remand.

by a preponderance of the evidence that it would have terminated Mrs. McClure after a constitutionally proper hearing. If the District is successful, Mrs. McClure will not be entitled to damages flowing from the termination itself. If the District does not satisfy its burden, it will be liable for compensatory damages resulting from its decision to terminate Mrs. McClure, including those resulting from her emotional distress. We reverse the district court's ruling that Mrs. McClure failed to mitigate her damages.

We conclude that the issue of a biased tribunal is no longer moot and we remand for further proceedings on this claim as well. We also hold that Mrs. McClure raised a genuine issue of material fact on her claim that she was denied her due process right to an impartial tribunal by the participation of Board members Stinson and Weston in the decision to terminate her employment. We therefore reverse the grant of qualified immunity to the individual defendants on this claim.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings.