**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GINGER JAMES; DEBORAH
TENNISON,

     Plaintiffs-Appellants,

v.

INDEPENDENT SCHOOL DISTRICT
NO. I-050 OF OSAGE COUNTY,
a/k/a Prue Public Schools; RON
MEADOWS, GERALD JACKSON,
VALERIE TRASTER and SYLVIA
HENDRIX, in their individual and
official capacities,

    Defendants-Appellees.

No. 10-5124
(D.C. No. 4:09-CV-00456-CVE-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **EBEL** and **O'BRIEN**, Circuit Judges.

---

Bringing suit under 42 U.S.C. § 1983, Ginger James and Deborah Tennison

(together, the plaintiffs) alleged defendants' termination of their employment with

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Prue, Oklahoma, public school district (the District) violated their First and Fourteenth Amendment rights. They appeal from a summary judgment rejecting their claims, in which the district court determined (1) their pre-termination hearing satisfied their due-process rights, and (2) they failed to show their speech was a motivating factor for the termination. We affirm.[1]

### *Background*

Defendants are the District and four individuals who were members of the Prue Board of Education (the Board) during the relevant times. The District is small, with a total of approximately 310 students. James was the elementary school principal, and Tennison was the high school principal. They both had administrator contracts, which included employment security provisions.

In February 2008, defendant Ron Meadows was elected to the Board with a campaign calling for change, including the dismissals of some staff. According to the testimony of Melvina Prather, the Interim Superintendent from April to June, 2008, when she met with Meadows on several occasions, he spoke about firing certain employees, including plaintiffs, because he did not think they could do their jobs. Another Board member, defendant Gerald Jackson, was present with Meadows on one of those occasions.[2] Jackson also said he wanted those

---

[1]    We have jurisdiction under 28 U.S.C. § 1291.

[2]    Plaintiffs submitted both an affidavit and deposition testimony from Prather. The two were not consistent, as the affidavit stated Jackson several times
(continued...)

employees fired. Prather refused to dismiss the employees. A new Superintendent, Randy Cottrell, was hired in the summer of 2008. He testified that during his interview, Meadows asked him if he would have a problem dismissing administrators. Also, during a car ride around town, Cottrell (in the back seat) heard Meadows and a third party (in the front seat) discuss dismissing plaintiffs.

In July 2008, however, the Board unanimously voted to approve plaintiffs' contracts for the 2008-2009 school year. A few months later, the Board became concerned about the District's finances. It initiated a financial investigation by retaining a financial consultant and, in November, terminated the treasurer's employment.[3] In December, it hired Douglas Jones to be the new assistant treasurer. It also suspended Cottrell, who eventually resigned and was succeeded by Phyllis Tarrant. At the January 2009 Board meeting, Jones advised the Board it was in a financial crisis.

---

[2](...continued)
asked her to fire the employees, but the deposition testimony identified only one meeting involving Jackson. We rely on the deposition testimony because the deposition gave Prather the opportunity to explain the statements in the affidavit.

[3]     The termination of the treasurer's employment is the subject of another appeal before this court. *See Bunch v. Indep. Sch. Dist. No. I-050*, No. 10-5109. An appeal was also brought by an employee whose contract was not renewed at the end of the 2008-2009 school year. *See Cypert v. Indep. Sch. Dist. No. I-050*, No. 10-5122.

On February 2, 2009, the Board heard a report on the District's financial condition. The Board (including a fifth, non-defendant member, Donald Horton) then unanimously approved a motion for the Board's attorney to notify plaintiffs of their possible dismissal and their right to a hearing. The next day, the District's attorney notified plaintiffs he would recommend their dismissal to the Board "[d]ue to a lack of funds," elimination of their positions, and the District's best interest. Aplee. Supp. App. at 219, 221. Plaintiffs availed themselves of their right to a pre-termination hearing.

Their joint hearing was held on February 23, 2009. Jones testified the District's spending was exceeding its revenues and the problem had reached a crisis level. Although he was still looking at the books, which were in some disarray, he was concerned the District would run out of money before the end of the school year and would have no carryover for 2009-2010. He also was concerned the District's revenues would decline further in the next year. He opined, "the board will have to look at every program in the district going forward to see where money can be saved," *id.* at 255, and "the district is on a very calamity course if things don't change," *id.* at 259. Without recommending any particular positions to be cut, Jones further opined there would have to be some reduction in personnel and it appeared the District had too many administrators.

Plaintiffs called an expert witness, Bill Bentley, who testified it was inappropriate to eliminate plaintiffs' positions because "there has been no effort to reduce expenditures" and, given the projected revenue shortfalls, it was inexplicable why the financial issues had not been addressed earlier. *Id.* at 273. But he did not challenge Jones' calculations:

> I have ever[y] reason to believe that his figures are accurate, although I have not verified them because I couldn't see the expenditure and revenue reports, but I trust Mr. Jones, I think he knows what he is doing[;] he is a former assistant superintendent and been working as a treasurer for a long time. So I trust his figures.

*Id.*; *see also id.* at 277 (stating Bentley thought Jones' best case/worst case scenario "could be accurate").

After an executive-session discussion, the Board (with Horton dissenting) concluded the District was in a financial crisis and needed to cut spending. It also concluded the District's administrative costs were excessive. Eliminating the positions of an elementary and a high-school principal, it decided, would have the least impact on the students and was in the District's best interest. Accordingly, the Board voted to eliminate the positions due to lack of funds and to dismiss the plaintiffs.

Plaintiffs claimed the pre-termination hearing did not satisfy their right to due process. They also alleged the termination was in retaliation for their exercise of free speech rights because, in the fall of 2008, they had supported a

state-court petition calling for a grand jury investigation into the activities of Board members. Plaintiffs appeal from the summary judgment.[3]

### *Analysis*

"We review *de novo* a grant of summary judgment, applying the same standard that governs the district court." *Lauck v. Campbell Cnty.*, 627 F.3d 805, 809 (10th Cir. 2010). We view "the evidence in the light most favorable to the appellant." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I.    Due Process

No defendant contends plaintiffs did not have a protected property interest in their employment or were not entitled to due process in connection with the termination. Plaintiffs, on the other hand, do not now contend their employment could not be terminated for legitimate fiscal reasons. Instead, they allege three procedural due-process violations: (1) the tribunal was biased; (2) they could not

---

[3]    Plaintiffs do not appeal from the dismissal of their state-law claims. The district court declined to exercise supplemental jurisdiction over them after rejecting the federal claims.

confront anyone who made the recommendation to terminate their contracts; and (3) the hearing was a sham.[4]

## A.    Impartial Tribunal

Plaintiffs argue the four individual defendants were biased, thus depriving them of an impartial tribunal.  "Impartiality of the tribunal is an essential element of due process." *Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009). Impartiality may be affected by a "personal or financial stake" in the outcome or "personal animosity." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 491-92 (1976).  But because "a person claiming bias on the part of an administrative tribunal must overcome a presumption of honesty and integrity in those serving as adjudicators," "a substantial showing of personal bias is required to disqualify a hearing officer or tribunal." *Riggins*, 572 F.3d at 1112 (quotations omitted).

Plaintiffs assert the district court erred in characterizing their evidence as hearsay and speculation.  We acknowledge some of the evidence was testimony from third parties about statements by the individual defendants.  But such statements appear to qualify as admissions of a party opponent, admissible under Fed. R. Evid. 801(d)(2).  Nevertheless, the district court correctly decided some

---

4    Before the district court, plaintiffs alleged both procedural and substantive due process violations.  The trial court decided the allegations did not rise to the level of a substantive due process violation.  Their brief mentions substantive due process only in passing.  They have waived our review of that issue. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1253 (10th Cir. 2010).

of their evidence, even though it was testimony under oath, was unsupported speculation. Horton, for example, offered an opinion, to wit, Meadows and Jackson had formed a plan to dismiss the targeted employees, and Traster and Hendrix went along. The problem is his opinion testimony is unsupported by facts. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).

Although some of the evidence is vague, there is admissible evidence about Meadows campaigning for the Board on a platform for change, he believed plaintiffs were not capable of performing their jobs, and he and other Board members made statements about dismissing plaintiffs in the summer and fall of 2008. But the record strongly suggests the individual defendants were not utterly committed to "getting rid of" plaintiffs, as averred; the Board unanimously voted to renew plaintiffs' employment in March 2008 and accepted their contracts in July 2008. More importantly, the issue before the Board in February 2009 was not whether plaintiffs were the best people for their jobs, but whether the District would better be served by eliminating their jobs altogether.

To disqualify a decisionmaker, we require a "substantial countervailing reason" to conclude he or she was "actually biased *with respect to factual issues*

*being adjudicated.*"  *Hicks v. City of Watonga*, 942 F.2d 737, 746-47 (10th Cir. 1991) (emphasis added) (quotation omitted).  In the circumstances of this case, plaintiffs' evidence does not meet this standard.

How best to cut the District's budget is a decision committed to the informed judgment of the Board and one we are most reluctant to second guess. Board members' previous positions regarding plaintiffs' job performance does not automatically disqualify them from participating in the Board's decision on this fiscal issue.  *See Hortonville*, 426 U.S. at 493 ("Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances." (quotation omitted)).  Further, given the urgent financial concerns facing the Board the district court correctly concluded the circumstances regarding campaign statements presented in *Staton v. Mayes*, 552 F.2d 908, 913-14 (10th Cir. 1977), and *McClure v. Independent School District No. 16*, 228 F.3d 1205, 1215 (10th Cir. 2000), are not sufficiently analogous to control.

Finally, the Supreme Court has indicated where a board makes a decision in a district's best interest, federal due process is not implicated, even if the decision may also serve board members' interests in other ways.  *See Hortonville*, 426 U.S. at 492 n.4 (stating, in response to the argument that Board members satisfied an anti-union agenda by dismissing striking teachers, "[W]e do not agree that federal

due process prevented the Board from pursuing a course of action that was within its explicit statutory authority and which, in its judgment, would serve the best interests of the school system. That the result may also have been desirable for other reasons is irrelevant to the due process issue on which the Wisconsin Supreme Court's decision turned, and if the other reasons are invalid under state law, respondents can resort to whatever forum the State provides.").

## B. Confrontation

Plaintiffs received their pre-hearing notice from the Board's attorney. They complain that because the attorney issued the notice, the hearing did not afford them an ability to confront anyone who recommended the elimination of their positions. "Because the Recommendation was not issued by a particular Board member or Superintendent but rather by [the Board's attorney], first representing the Board then some unknown entity, Plaintiffs were deprived of a fair hearing." Aplt. Opening Br. at 25.

The Board did not violate due process by directing its attorney to notify plaintiffs their positions were being considered for elimination. Due process requires notice, but not necessarily notice from someone the employee can subsequently confront and cross-examine at a due-process hearing. Plaintiffs had the opportunity to confront and cross-examine the witnesses who testified at the

hearing and the opportunity to call witnesses on their behalf. Without anything beyond bare assertions of improprieties, their confrontation argument fails.[5]

## C. Sham Hearing

Finally, plaintiffs allege the cumulative effect of the evidence compels us to conclude the hearing was a sham because, in actuality, the District was not facing a financial crisis. They contend "the financial justifications were spotty at best and ridiculous at worst." *Id.* Their analysis, however, relies heavily on hindsight. The District's financial situation had been an issue of concern to the Board since the late fall of 2008. At the hearing, Jones stated the District might have insufficient carryover funds for the 2009-2010 school year. Nothing of record even remotely suggests Jones harbored a bias against plaintiffs or deliberately manipulated his figures to support a nonexistent financial crisis; in fact, plaintiffs' own witness evinced a belief in Jones' calculations. At most, Jones' analysis turned out to be wrong, but "errors, by themselves, do not show

---

[5]     Plaintiffs' somewhat enigmatic argument confounds the issue. The Board (not the attorney) actually heard the evidence and rendered its decision. Plaintiffs did not request to voir dire the board members for bias, but merely argued that some board members might harbor a bias. *See* Aplee. Supp. App. at 236 ("Finally, we object to the fact that is our position members of the board at least three (3) or four (4) members of the board are biased toward Ms. Tennison and Ms. James. This has been part of and this is part of our case today so I am saying this objection for the record."). If the hearing was not as fulsome as they might have desired it comes from their lack of precision in identifying the relief they were seeking – an opportunity to discover <u>disqualifying</u> bias on the part of any board member. Since a specific request was not made and denied we are left to speculate as to what a proper inquiry might have produced.

that the hearings were shams." *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 928 (7th Cir. 2007).

Plaintiffs briefly list other alleged indicia of a sham hearing. They note the hearing officer was paid by the Board's law firm. But that is not a due-process violation. *See Riggins*, 572 F.3d at 1114 ("Nor does procedural due process require access to professional hearing officers or hearing officers not employed by the governmental body or agency taking the adverse action."). They point to a telephone conversation between the Board's attorney and the financial consultant, but do not explain why such evidence would be admissible or what it might reveal. They reiterate their equivocal evidence of bias and complain that no Superintendent made any recommendation to the Board.[6] As we have explained, however, these issues do not create a genuine issue of material fact regarding a denial of due process.

## II. Free Speech

Plaintiffs next quarrel with the district court's resolution of their retaliation claims, i.e., they were fired for exercising their First Amendment rights. We apply the five-step framework established by the Supreme Court in *Garcetti v.*

---

[6]     During the period from December 2008 to February 2009, the District had a Superintendent and two Interim Superintendents. Cottrell was suspended in December 2008, and Charles Biggs was appointed as Interim Superintendent. At the February 2, 2009, meeting, the Board accepted Cottrell's resignation. Shortly thereafter, on February 9, the Board employed Phyllis Tarrant as Interim Superintendent for the remainder of the school year.

*Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968). *See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010).

In their summary judgment brief, plaintiffs asserted their speech was (1) "actions relating to the grand jury petition filed against the Prue School Board members"; (2) their involvement in a criminal investigation of Meadows' son at some unspecified time before the hearing; and (3) "other happenings of [sic] related to the Prue School District." Aplt. App. at 96. The district court held, "Plaintiffs provide no evidence of what these statements were, when they were made, to whom, or how they were relayed to defendants. . . . These vague and conclusory allegations are insufficient." *Id.* at 166.

Plaintiffs tell us they "have produced sufficient evidence of statements and actions that they engaged in as citizens relating to matters of public concern." Aplt. Opening Br. at 28. But the record contains only general allegations failing to identify with particularity statements or actions sufficient to satisfy their burden to identify the specific instances of speech underlying their claims. *See Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001) (discussing inadequate identification of speech in appellate argument). They did not establish the occurrence and/or the content of the speech sufficiently for the district court to even begin the *Garcetti*/*Pickering* analysis.

AFFIRMED.[7]

Entered for the Court

Terrence L. O'Brien
Circuit Judge

<hr/>

[7] Because the district court declared certain materials stricken and plaintiffs have not appealed that ruling, we have not considered those materials in making our decision. Defendants' motion to strike is DENIED.